(May 25, 1916.)

# HAZEL SAUVE, Appellant, v. TITLE GUARANTY & SURETY COMPANY OF SCRANTON, PENNSYL-VANIA, a Corporation, Respondent.

[158 Pac. 112.]

CAREY ACT CONTRACT — CONSTRUCTION CONTRACT — BOND — FAILURE TO COMPLETE CONTRACT—DAMAGES—ORIGINAL LOCATORS—CONSTRUING TERMS OF CONTRACT — SURROUNDING CIRCUMSTANCES — SEC. 1623, REV. CODES — CAREY ACT BOND — PURPOSE — MANNER OF ENFORCEMENT—REMEDY—DUTY OF STATE LAND BOARD—RESORT TO BOND—PROTECTION AND BENEFIT TO ALL SETTLERS ON PROJECT.

1.   A corporation known as the Big Lost River Land & Irrigation Company, Limited, made a Carey Act construction contract with the state, and sold for cash and on time a number of water right contracts to settlers, among which was the contract of appellant.   Subsequently it became insolvent and transferred to one Speer all its interest under such state contract.   Speer thereupon made a new contract with the state, and gave the bond of the respondent corporation for the completion of the contract.   *Held,* that although there are provisions in the contract entered into between Speer and the state other than such as are contained in the ordinary Carey Act contract, which provisions are set out in full and referred to in the opinion of the court, yet that contract is a construction contract only.

2.   *Held,* that the bond given by Speer when he entered into the contract with the state to well and truly perform or cause to be performed all the covenants, conditions and stipulations of his contract with the state, and to keep harmless and protect the state against all loss by reason of the nonfulfilment of his contract and of any claims, defects, errors, liens and encumbrances arising therefrom, is a construction bond only, conditioned for the fulfilment of the terms and conditions of the contract with the state according to the plans and specifications thereof.

3.   *Held,* that the provisions inserted in the contract between Speer and the state with reference to the contractual relations between the original construction company and the original locators were intended to carry out and fulfil all contracts for water rights theretofore sold and contracted to be furnished upon the same terms and conditions as had been agreed to between the original construction company and the original locators.

Points Decided.

4. *Held*, that it was not the intention of the state or Speer, with whom it made said contract, that the original locators should stand in any different position from that of other and subsequent locators under the project as far as regards damages which they might sustain by failure to complete the contract.

5. In the construction of a written contract, if there is room for doubt as to its true meaning, the facts and circumstances out of which such contract arose should be considered, and the contract construed in the light of such facts and circumstances.

6. Under sec. 1623, Rev. Codes, the purpose of a Carey Act bond is declared and the manner of its enforcement provided for. The liability and the remedy being created by the same statute, said remedy is exclusive, and the obligor of the bond is in a position to insist that the statutory remedy be followed.

7. Under the provisions of sec. 1623, Rev. Codes, upon the failure of the construction company to complete the irrigation works according to the terms of its contract with the state, it became the duty of the register of the state land board to give such construction company written notice of such failure, and if, after a period of sixty days from the giving of such notice, the company failed to proceed with the work or to conform to the provisions of its contract with the state, then the contract and the bond and all works constructed thereunder would be forfeited to the state. It was the duty of the state land board to follow the provisions of this statute to advertise and accept proposals for the completion of the irrigation works and to proceed to sell the partially completed works, and apply the moneys received therefrom as provided by law.

8. Under the provisions of the statutes of this state, all settlers on the Big Lost River Project were entitled to the protection of the construction bond; and the entire amount of it was intended to guarantee the completion of the project. The bond cannot be resorted to for the purpose of reimbursing individual locators for damages sustained by failure to complete the works, but must be resorted to by the state for the benefit of all the locators on the project.

APPEAL from the District Court of the Third Judicial District for Ada County.   Hon. Carl A. Davis, Judge.

Action to recover upon a Carey Act construction bond. Ruling of the trial court sustaining demurrer *affirmed*.

Edwin Snow and Perky & Brinck, for Appellant.

Those covenants wherein Speer expressly bound himself to carry out and fulfil the settlers' contracts were covenants directly for the benefit of these settlers. If it was to that extent a contract made directly for the benefit of these settlers, under the statutes of Idaho the settlers can sue directly in their own names upon that contract and upon the bond given to secure its fulfilment. (Sec. 3313, Rev. Codes; Pomeroy on Code Remedies, 4th ed., p. 105; 2 Elliott on Contracts, sec. 1411.)

When an obligation is inserted in a public contract for the benefit of third parties, in pursuance of some moral obligation attaching to the board or officer making the contract on behalf of such third parties, then, even though such an additional obligation for the benefit of such third parties is not strictly pursuant to the statute, the contract, being voluntarily entered into, is good quite outside of the statute, and the bond given to secure the contract is enforceable as a common-law obligation. (*Knapp v. Swaney*, 56 Mich. 345, 56 Am. Rep. 397, 23 N. W. 162; *People's Lumber Co. v. Gillard*, 136 Cal. 55, 68 Pac. 576; *United States Gypsum Co. v. Gleason*, 135 Wis. 539, 116 N. W. 238, 17 L. R. A., N. S., 906; *Connor Co. v. Aetna Indemnity Co.*, 136 Wis. 13, 115 N. W. 811; *Williams v. Markland*, 15 Ind. App. 669, 44 N. E. 562; *Kaufmann v. Cooper*, 46 Neb. 644, 65 N. W. 796; *Knight & Jillson Co. v. Castle*, 172 Ind. 97, 87 N. E. 976, 27 L. R. A., N. S., 573; *Fitzgerald v. McClay*, 47 Neb. 816, 66 N. W. 828.)

"Where the statutory remedy is not adequate, there is no implication that it was intended to be exclusive, and resort must be had for the execution of the power or the enforcement of the right to the ordinary judicial proceeding." (*Johnston v. City of Louisville*, 74 Ky. (11 Bush) 527; *Mapel v. John*, 42 W. Va. 30, 57 Am. St. 839, 24 S. E. 608, 32 L. R. A. 800; *Jaffe v. Fidelity & Deposit Co.*, 7 Ala. App. 206, 60 So. 966; *Westervelt v. Dives*, 231 Pa. 548, 80 Atl. 1054.)

John F. Nugent, S. H. Hays and P. B. Carter, for Respondent.

If the settler enters land, he takes it subject to the acts of the state acting as his agent, and must be considered as adopting and approving these acts. (*Idaho Irr. Co. v. Pew,* 26 Ida. 272, 141 Pac. 1099.)

The bond in question is a bond required by statute. The amount of the penalty is fixed by law, also the method of forfeiture. It is, therefore, a statutory bond. (*Lowe v. City of Guthrie,* 4 Okl. 287, 44 Pac. 198; *San Francisco Lumber Co. v. Bibb,* 139 Cal. 192, 72 Pac. 964.)

In cases where there is matter placed in a statutory bond or a contract which it secures in addition to those things required by the statute, the conditions not authorized will be rejected as surplusage and the residue sustained as a good statutory bond. (*Macready v. Schenck,* 41 La. Ann. 456, 6 So. 517; *State v. Findley,* 10 Ohio, 51; *Pratt v. Wright,* 13 Gratt. (Va.) 175, 67 Am. Dec. 767, and note 1, on page 772.)

The bond must be taken to be given under the terms of the statute and to contain such an obligation as is called for thereby. (*Judge of Probate v. Ordway,* 23 N. H. 198; 5 Cyc. 756.)

In construing the new state contract under which the claim is made in this case, we must take into consideration the surrounding conditions. (*Twin Falls Orchard etc. Co. v. Salsbury,* 20 Ida. 110, 117 Pac. 118; *State v. Twin Falls Canal Co.,* 21 Ida. 410, 121 Pac. 1039.) The interest which the settlers were to obtain in the project was a proportionate interest under the statute. (Sec. 1615, Rev. Codes; *State v. Twin Falls Canal Co., supra.*)

The method of recovery on this bond is a special one, suitable in such cases and in conformity with the plan of the statute. A statute creating a remedy of this character is exclusive. (*Fourth Nat. Bank v. Francklyn,* 120 U. S. 747, 7 Sup. Ct. 757, 30 L. ed. 825; *Jessup v. Carnegie,* 80 N. Y. 441, 36 Am. Rep. 643; *Sudbury Meadows v. Proprietors of Middlesex Canal,* 23 Pick. (40 Mass.) 36; *Dodge v. Essex County,*

*Commissioners,* 3 Met. (44 Mass.) 380; *Elder v. Bemis,* 2 Met. (43 Mass.) 599; *Calking v. Baldwin,* 4 Wend. (N. Y.) 667, 21 Am. Dec. 168.)

A third person cannot recover on a bond unless the bond was made for the direct and primary benefit of such person. (*Parker v. Jeffery,* 26 Or. 186, 37 Pac. 712.)

BUDGE, J.—This is an action by one of the purchasers of water rights under the Big Lost River Carey Act Project to determine whether or not she is entitled to recover damages upon a bond given to the state of Idaho in connection with the contract between the state and one George S. Speer. The action was brought upon four causes of action; three having been assigned.

It appears from the record that a corporation known as the Big Lost River Land & Irrigation Company, Limited, organized under the laws of this state, on April 30, 1907, entered into a contract with the state for the purpose of constructing irrigation works under the terms of the Carey Act for the reclamation of about eighty thousand acres of land. In the month of February, 1909, the Big Lost River Land & Irrigation Company, Limited, which had then become insolvent, sold and conveyed to George S. Speer whatever property it had, including its right, title and interest in the irrigation project. Prior to this time, while the Big Lost River Land & Irrigation Company, Limited, was solvent, it sold for cash and on time a number of water right contracts to settlers, among which was the contract of appellant.

On May 27, 1909, Speer entered into a new contract with the state of Idaho which, it is contended, was to take the place of the contract previously made between the Big Lost River Land & Irrigation Company, Limited, and the state, and to embrace the contracts with the original locators. The contract included some additional lands within the project. On the same date that the contract was entered into between Speer and the state, Speer, as principal, and the Title Guaranty & Surety Company, the respondent corporation here, made, executed and delivered to the state of Idaho an under-

taking in the sum of $175,000. This undertaking was condi-
tioned for the performance of the contract. Shortly after
Speer made his contract with the state and gave the bond sued
upon in this action, to wit, on or about June, 1909, he sold
and conveyed all his right, title and interest in and to the
irrigation project to the Big Lost River Irrigation Company,
which corporation was organized by him and his associates
for the construction of the project. This latter corporation
was the construction company that undertook and agreed to
complete the project, commonly known as the Big Lost River
Project, after which it, like its predecessor, became insolvent.
Neither Speer nor the construction company is made a party
to this action.

The present suit is brought against the Title Guaranty &
Surety Company to recover damages for the failure of the
Big Lost River Irrigation Company to complete the project,
and furnish water to appellant and her assignors.

To the complaint in the trial court a demurrer was inter-
posed upon the grounds, first, that the complaint as a whole
and as to its various parts did not state facts sufficient to con-
stitute a cause of action; second, that there was a misjoinder
of causes of action, for the reason that separate and distinct
causes of action on separate and distinct contracts with dif-
ferent persons are united in one complaint; and third, that
the plaintiff has not legal capacity to sue. The demurrer was
sustained and upon failure to amend, a judgment of dismissal
was entered. This appeal is from the judgment.

Speer's contract with the state contains, among others, the
following terms:

"Whereas it appears that said Big Lost River Land and
Irrigation Company, Limited, has entered into contracts to
a large extent with settlers upon the lands to be reclaimed to
supply said settlers with water for their lands, and which
contracts are still in force and unfulfilled on the part of said
Company, and it further appearing to the Board that it is
to the interest of the State and to the settlers holding water
contracts with said Big Lost River Land and Irrigation Com-
pany, Limited, the rights of which latter it is the purpose to

secure by the terms of such altered and amended contract, that the request of said George S. Speer should be granted to the end that the said works may be completed as originally proposed, and that the rights of the settlers upon the lands included in said project may be secured. . . . . ''

It is the contention of appellant that under the terms of the contract as above recited, it was the purpose of the state land board to protect the rights of the purchasers of contracts from the Big Lost River Land & Irrigation Company, Limited, both cash and time, by placing them in a different position from that occupied by subsequent purchasers of contracts upon the irrigation tract; and that, under other terms of the contract, presently to be recited, it is specifically provided that if default should be made by the Big Lost River Irrigation Company, these former contract holders would be entitled to recover such damages as they may sustain, irrespective of any action taken by other settlers or by the state on behalf of other settlers on the project.

Paragraph 21 of the contract between Speer and the state, upon which appellant also relies for relief as above indicated, provides:

"Said party of the second part hereby assumes and undertakes the fulfillment of each and every of the contracts, both time and cash, for water rights heretofore sold and contracted to be furnished by the Big Lost River Land & Irrigation Company, Limited, with the several persons, or the assigns of such persons, mentioned and set forth in the Schedule hereunto attached and marked Schedule 'C' and made a part of this agreement and it is agreed that, upon the execution of the said party of the second part or his assigns, of contracts in the form heretofore approved by said Board and which are hereunto annexed, made a part of this agreement and marked Schedule 'D,' the said several parties holding time water contracts with said Big Lost River Land & Irrigation Company, as per Schedule 'C,' shall surrender said contracts so held and receive in lieu thereof a new contract as herein provided. The price for shares of water rights in such new contract to be the same as is provided in the contract surrendered

and the holder of a time contract as per said Schedule 'C,' shall, at the time of executing such new contract, receive credit for the payment heretofore made on such former contract and the remaining payments shall correspond in amount to those provided for in such former contract.''

To secure the fulfilment of the provisions of the contract heretofore recited, Speer, as principal, and the Title Guaranty & Surety Company, executed to the state and delivered to the state land board the bond before mentioned, which contains the following provisions:

"That if the above bounden George S. Speer does well and truly perform or cause to be performed all the covenants, conditions and stipulations of said contract above recited on his part to be kept and performed and shall keep harmless and protect the said State of Idaho from and against all loss by reason of the non-fulfillment by said George S. Speer, Principal, of the covenants contained in the said contract, to be performed by him as aforesaid, and also against actual loss by reason of any and all claims, defects, errors, liens and encumbrances arising from the non-fulfillment by the said Principal of said covenants, then this obligation to be void; otherwise to be and remain in full force and virtue.''

The appellant, in her complaint, alleges the nonfulfilment by Speer and the construction company of the covenants set out in the contract as heretofore quoted, in that he and that company entirely failed to fulfil the several respective settlers' contracts by failing to complete the project and furnish water according to the terms and conditions of the contract between Speer and the state. Appellant insists that the contract entered into between Speer and the state was for the primary purpose of protecting the rights of the former contract holders, who are the real beneficiaries under the contract and under the bond given to secure the fulfilment thereof.

Counsel for appellant in their brief say: ''We think the main question involved in this case may be stated as follows:

''Does the contract between Speer and the state, independent of the bond, contain covenants upon which the settlers can sue?'' And they affirm that ''If the settlers can sue

Speer upon these covenants inserted for their benefit in the state contract, then it would follow as a general principle that they may sue and recover from the surety company upon the bond.''

Appellant insists that Speer not only covenanted to carry out his contract with the state, but that he also covenanted and bound himself to carry out and fulfil the contracts made between certain settlers and the Big Lost River Land & Irrigation Company, Limited; and, by reason of peculiar conditions then existing, a different contract was made between Speer and the state from the ordinary Carey Act contract contemplated by the statutes; that those covenants for the breach of which it is sought to recover in this action, made directly for the benefit of certain named settlers, were entirely beyond any situation contemplated by the statutes; and that the bond, conditioned as it was upon the fulfilment of these special contractual obligations to third parties, should be given, as to those third parties, such a construction as will effectuate the stated purposes of the contract.

But respondent contends that the contract entered into between Speer and the state for which the bond was given to secure fulfilment is a construction contract only, and that the liability upon the bond extends merely to a failure on the part of Speer and his assigns to complete the project according to the plans and specifications made a part of the contract. In other words, it contends that the liability upon the bond is limited under the statutes of this state to certain specific contingencies; that the statutes prescribe the method of enforcing such liability; that the statutory provisions are exclusive, and until the contingencies arise, and until the state has taken the action provided in the statutes, the bond is unenforceable. Section 1623, Rev. Codes, upon which respondent relies, provides:

''Upon the failure of any parties, having contracts with the state for the construction of irrigation works, to begin the same within the time specified by the contract, or to complete the same within the time or in accordance with the specifications of the contract with the state, to the satisfaction of the

state engineer, it shall be the duty of the register to give such
parties written notice of such failure; and, if after a period
of sixty days from the sending of such notice, they shall have
failed to proceed with the work or to conform to the specifi-
cations of their contract with the state, the bond and con-
tract of such parties and all works constructed thereunder
shall be at once and thereby forfeited to the state; and it
shall be the duty of the board at once so to declare and to
give notice once each week, for a period of four weeks, in
some newspaper of general circulation in the county in which
the work is situated, and in one newspaper at the state capital
in like manner and for a like period, of the forfeiture of said
contract, and that upon a fixed day proposals will be received
at the office of the board in the capitol at Boise City for the
purchase of the incompleted works and for the completion
of said contract, the time for receiving said bids to be at
least sixty days subsequent to the issuing of the last notice
of forfeiture.   The money received by the board from the sale
of partially completed works under the provisions of this sec-
tion shall first be applied to the expenses incurred by the state
in their forfeiture and disposal, and to satisfying the bond;
and the surplus, if any exists, shall be paid to the original
contractors with the state.''

Respondent insists that, before an action can be maintained
upon a bond given to secure the fulfilment of a Carey Act
contract, such as the one under consideration, it must appear,
first, that there has been a default in certain prescribed par-
ticulars; second, that notice to the contracting company by the
register of the state land board has been given; third, that
there has been a declaration of forfeiture by the state land
board upon the bond, the contract, and all construction works
performed thereunder; fourth, that there has been notice and
sale by the state of the uncompleted works, and application
of the proceeds under the statutes; and fifth, that there is a
liability upon the bond for a deficiency.   Or, it might be
stated, that no suit can be instituted upon the bond except
by the state itself, and then only after a default in the terms

and conditions of the contract, and declaration of forfeiture as provided under section 1623, *supra.*

We have undertaken briefly to state the contentions of both appellant and respondent. Respondent relies upon sec. 1623, Rev. Codes, which, it contends, in this case governs its liability upon the bond, and which, by its terms, absolutely prohibits appellant from maintaining this action in the absence of allegations of a forfeiture and a right to sue under the statutes relating to Carey Act contracts and bonds. Appellant, on the other hand, insists that by reason of the terms of the particular contract in question, Speer, the construction company, and the bondsmen assumed an obligation to third parties not in contemplation of the statute, and that even though this were not the case and the court should conclude that the contract between Speer and the state is an ordinary Carey Act contract, yet the statutory provisions contained in section 1623 are not intended to be exclusive, nor to set forth the only liability under the bond.

This, then, brings us to an examination of the nature of the Carey Act, the contract made under it between Speer and the state, the reason for the giving of the bond, and who is secured by it. It is particularly necessary to determine whether there are any special covenants in the contract that afford protection to appellant and her assignors different from that afforded all locators on the tract in common, upon which a recovery can be had against the Title Guaranty & Surety Company under its bond.

We are not disposed to discuss at length the nature of the Carey Act, but feel that a brief review will suffice. Under this act numerous projects have been launched in this state— some of them having temporarily and others totally failed. These failures are, no doubt, largely due to a lack of a complete understanding on the part of the construction companies of the character of the work and the difficulties to be met in the construction of an irrigation project; also to a lack of a clear understanding by all interested in the construction of these irrigation projects of the provisions and general purpose of the various acts of Congress granting to the states

desert lands located within their boundaries for reclamation, cultivation and settlement, and of the state legislatures accepting from the general government these grants, prescribing the methods to be pursued by corporations, partnerships and individuals in the selection of such arid lands for reclamation, and providing for the supervision and approval by various state officers of the proposed projects with a view to assure an adequate supply of water being procured to properly irrigate the lands within the projects.

The legislation known collectively as the Carey Act authorized the arid states to make all necessary contracts to cause the arid lands granted within their limits to be reclaimed and to induce their settlement and cultivation. This was the chief aim of Congress in enacting the Carey Act laws. And to meet this end, the state legislatures have enacted laws prescribing the manner of their reclamation in conformity with the conditions imposed by the general government.

A contract made under the provisions of the Carey Act between a construction company and a state is primarily a construction contract, having in view the requirements of the general government relating to the conditions under which title to desert lands may be acquired by a state for reclamation. The construction company is confronted at the outset with the provisions of the Carey Act (29 Stats. at Large, 434), limiting the lien that the state may create against the land to be reclaimed to the actual cost and necessary expenses of reclamation and reasonable interest thereon from the date of reclamation until disposal to actual settlers. And in this state the construction company must offer a proposal to the state land board, which, among other things, must contain information as to the source of water supply; location and dimensions of the proposed works; the estimated cost thereof; the price and terms per acre at which perpetual water rights would be sold to settlers, said perpetual rights to embrace a proportionate interest in the irrigation works and the water rights attached thereto. Upon receipt, the proposal must be examined by the register to ascertain if it complies with the rules of the board and the regulations of the Department of

the Interior. It then is submitted to the state engineer, who is required to report whether the proposed works are feasible; whether the proposed diversion of the public waters of the state will prove beneficial to the public interest; whether there is sufficient unappropriated water in the source of supply; whether or not a permit to divert and appropriate water through the proposed works has been approved by him; whether the capacity of the proposed works is adequate to reclaim the land described; whether the proposed cost of construction is reasonable; and whether the maps and papers are in regular form. If the project is approved by the state engineer, it then goes to the state land board for its approval; and if the board approve the proposal, it shall instruct the register to file in the local land office a request for the withdrawal of the land described in the proposal.

When all of these things, which are for the protection of settlers then on and who may go on the project, have been done, and the land is withdrawn by the Department of the Interior, it becomes the duty of the state land board to enter into a contract on behalf of the state with the construction company.

Sec. 1621, Rev. Codes, provides what shall be included in the contract, and expressly states that it shall not be entered into on the part of the state until the filing of a satisfactory bond on the part of the proposed contractor for the irrigation works, which bond shall be in a penal sum equal to five per cent of the estimated cost of the works, and shall be conditioned for the faithful performance of the provisions of the contract with the state. It might be conceded that provisions other than those contained in this section may be inserted in the contract and become binding upon the construction company, provided the interests of the state and of the settlers on the project are in no manner jeopardized by such provisions. But it is clear to us that the bond equal to the sum of five per cent of the estimated cost of the works and conditioned for the faithful performance of the provisions of the contract with the state was never intended to secure such additional provisions.

Appellant contends that the contract under consideration did contain other provisions than those contained in section 1621, *supra;* and that by reason of these additional provisions the construction company became liable in damages to her and her assignors for its failure to fulfil them.   We have heretofore quoted these alleged additional provisions.   By placing a fair and reasonable construction upon them, in the light of the statutory provisions heretofore mentioned, we are of the opinion that they are to the effect that Speer undertook to carry out and fulfil each and all of the contracts, both time and cash, for water rights theretofore sold and contracted to be furnished, upon the same terms and conditions as had been agreed to by the Big Lost River Land & Irrigation Company, Limited, and the original locators.   Subsequent locators were to pay, under the new contract between Speer and the state, a higher price for their water rights within the project, but no change was to be made in the price per acre for the water rights paid or to be paid by appellant and her assignors.   Further, no change was to be made in the conditions of the original contracts held by appellant and her assignors, except that it was agreed that these old contracts should be surrendered, and new contracts executed between the original locators and the new company.

It is clear to our minds that the state land board endeavored to protect the original contract holders, both in the amount of money theretofore paid and in the terms and conditions of their original contracts, and, at the same time, to secure the completion of the project for the benefit of the state, the old and the new locators.   We are of the opinion it was never the intention of the state or Speer that the old locators should stand in any different position from that of other locators. upon the tract, so far as regards damages or losses which they might sustain.   For what they had paid to the old company which had become insolvent, they were to be given credit for shares of stock in the new operating company, to wit, the Lost River Water Company, or if their contracts were paid in full, then shares of stock in the new operating company were to be delivered them on surrender of their old contracts.

This, we believe, was the protection which the state land board had in view at the time when they entered into the contract with Speer. The contract or bond, in our opinion, cannot be so construed that the losses and damages suffered and sustained by appellant and her assignors shall have preference over losses and damages suffered and sustained by all of the locators upon the tract. To have made any discrimination would have been unfair and inequitable.

In construing the contract before us we must take into consideration the facts, conditions and circumstances which confronted both the state land board and Speer at the time the contract was made. In this case the insolvency of the Big Lost River Land & Irrigation Company, Limited, whose contracts were outstanding, for the default of which the contract holders may be presumed to have had a cause of action against that company, would seem to make it quite improbable that Speer and his successors in interest, without any other consideration than that appearing in the contract which they entered into with the state, would assume any greater obligation than to complete the project and furnish water to the old contract holders under the terms and conditions of their contracts with the old company, or that the state would be interested beyond the final completion of the project by the construction company, and the fulfilment by the settlers of their contracts with the construction company—to the end that the arid lands might be reclaimed by irrigation, cultivation and settlement. This court held, in the case of *Burke Land etc. Co. v. Wells, Fargo & Co.*, 7 Ida. 42, 60 Pac. 87, that, "In the construction of a written contract, if there is room for doubt as to its true meaning, the facts and circumstances out of which such contract arose should be considered, and the contract construed in the light of such circumstances."

The bond given by the Title Guaranty & Surety Co. was in the penal sum equal to five per cent of the estimated cost of the works, as provided by sec. 1621, Rev. Codes. The contract neither in terms nor by fair implication provides that any part or portion of this bond may be resorted to for the purpose of reimbursing appellant or her assignors for any

damages sustained. That such was not the intention of the state land board is further emphasized by rule VI of the rules and regulations of the state board of land commissioners governing the reclamation of lands under the Carey Act, issued in 1912, which provides, among other things, as follows:

"Lands will be opened to entry from time to time as the construction of the works proceeds, and applications by qualified persons to enter such lands will be received by the Board after notice has been given that the lands are open for entry. The Board will require a satisfactory bond in such sum as it may determine, from the party or parties constructing the irrigation works, to be deposited in the office of the Register, conditioned on the return to the applicants, with interest at six per cent per annum thereon, of all payments made by them on account of water rights purchased for entries approved in advance of the availability of water, if water for the irrigation of their entries is not available at the time and in the manner stipulated in the agreement with said applicants. . . . . "

From the foregoing rule it is evident that the state land board has construed section 1621, Rev. Codes, to provide for a construction bond in the sum of five per cent of the estimated cost of the works, which bond can be resorted to only in case the construction company fails to faithfully perform all the provisions of the contract with the state for the construction of the irrigation works, and which cannot be sued upon for the recovery of the initial payments together with interest thereon. And if this bond may not be resorted to by settlers on a project for recovering initial payments with interest, it is inconsistent to contend that it may be resorted to for the purpose of recovering prospective or contingent damages.

This may or may not have been a rule of the state land board at the time the contract now under consideration was executed, and, it may be argued, cannot for that reason be considered in reaching a determination of what the parties to this contract intended. But even so, it cannot be presumed that the state land board is now placing a different construc-

tion upon this statute from what it did then. And the rule is therefore important in assisting the court to place a proper interpretation upon the terms of the contract, as it tends to show what was the intention of the parties at the time the contract was entered into.

There is another and possibly more substantial reason why the bond cannot be resorted to by appellant for the purpose of indemnifying her in damages sustained as alleged in her complaint, which is that the statute in terms creates the liability upon the bond in the event of a default in the completion of the works by the construction company. It also declares the purpose of the bond and provides the manner of its enforcement. The liability and the remedy is created by the same statute. This being true, it would seem to us that the remedy provided in the statute is exclusive, and that the respondent company is in a position to insist upon the statutory remedy being followed. In *Pollard v. Bailey,* 87 U. S. (20 Wall.) 520–527, 22 L. ed. 376, 378, it was held that a general liability created by statute without a remedy may be enforced by an appropriate common-law action; but where the provision for the liability is coupled with a provision for a special remedy, that remedy, and that alone, must be employed. The same principle would apply even though the appellant or her assignors had completed the payments on their contracts with the old company.

It is conceded that at the time appellant and her assignors entered into the contract with the Big Lost River Land & Irrigation Company, Limited, no water was available. Therefore the contract holders were under no legal obligation to make other than the initial payments, or to make improvements or move upon the land. Whether, in the absence of a sufficient bond to guarantee reimbursement to the locators, their failure to make the initial payments could in any way interfere with or jeopardize their selections preceding the time when water was available, we are not called upon to determine.

It will be remembered that this action is not brought upon the bond given by the old company. Neither is the old

company made a party defendant to this action. But appellant relies, first, upon the terms of the contract heretofore quoted, and, second, contends that even in case of the ordinary Carey Act contract, the statutory provisions contained in section 1623 are not intended to be exclusive or to set forth the only liability under the bond. The portion of the contract upon which she lays particular stress reads: "It further appearing to the board that it is to the interest of the state and to the settlers holding water contracts with said Big Lost River Land and Irrigation Company, Limited, the rights of which latter it is the purpose to secure by the terms of such altered and amended contract, that the request of said George S. Speer should be granted." But this particular portion of the contract is explained and made entirely clear by the clause immediately following it, namely, "to the end that the said works may be completed as originally proposed, and that the rights of the settlers upon the lands included in said project may be secured." It was for the fulfilment of these covenants that the respondent furnished the bond sued upon here.

A careful consideration of the provisions of this contract leads us to conclude that the completion of the irrigation works was the dominant purpose in the minds of the parties to the contract. The interests of the state and the settlers generally had been thoroughly protected in the selection of lands for reclamation under the provisions of the Carey Act and statutes of this state; and the terms of the contract cannot be construed to afford any additional protection to appellant and her assignors, except that they were to be furnished water under the same terms and conditions and at the same price as theretofore agreed upon between them and the Big Lost River Land & Irrigation Company, Limited.

The bond was given for the sole purpose of guaranteeing the completion of the project. Therefore, under section 1623, *supra,* upon the failure of the construction company to complete the irrigation works according to the terms and conditions of the contract to the satisfaction of the state engineer, it became the imperative duty of the register to give such

construction company written notice of such failure, and if, after a period of sixty days from the giving of such notice, the construction company failed to proceed with the work or to conform to the specifications of its contract with the state, then the contract and the bond of such parties, and all works constructed thereunder, would be forfeited to the state. It was the duty of the state land board to follow the provisions of this statute, to advertise and accept proposals for the completion of the irrigation works, and to proceed to sell the partially completed works and apply the moneys received therefrom as provided by law.

We have reached the conclusion that the provisions of the contract relied upon by appellant are not such covenants as will sustain a recovery, under the allegations of her complaint, of the damages therein alleged; and that the statutory provisions contained in section 1623 are exclusive, and set forth the liability of respondent under its bond. We are also satisfied that the contract entered into between Speer and the state was a construction contract for the construction of the irrigation project only, and that the bond given by the Title Guaranty & Surety Company was to secure the performance of this construction contract. To hold that covenants other than for the completion of the irrigation works are secured by the bond upon which this action is sought to be maintained, and to allow a recovery thereon, would result in reducing the bond below the five per cent of the estimated cost of the construction, and thereby defeat the purpose for which it was given.

In our opinion, under the plain provisions of the statutes, all of the settlers on this project were entitled to the protection of this bond, and the entire amount of it was intended to guarantee the completion of the project. Therefore, it cannot be resorted to for the purpose of reimbursing individual locators for damages sustained by the failure to complete the works, but should be resorted to by the state to the end that the irrigation project be completed for the benefit of all locators thereon.

If it had been the intention of the state land board at the time the contract was entered into between the state and

Speer that other covenants than those pertaining to the construction of the project were to have been secured by the bond, some reference would have been made in the bond to such covenants, and the bond would have been given in excess of five per cent of the estimated cost of construction, or an additional bond would have been required in an amount sufficient to cover these additional covenants and such other damages as might be suffered or sustained by locators on the tract, providing such damages were ascertainable. An examination of the bond shows that reference is made to certain covenants for which the bond is given, but no reference is made to any undertaking on the part of Speer or respondent to respond in damages to appellant individually for failure to complete the contract.

The demurrer of respondent raises two other questions, namely, misjoinder of causes of action, and the legal capacity of appellant to sue. But since we have reached the conclusion that appellant's complaint, for the reasons herein given, fails to state facts sufficient to constitute a cause of action, and that she cannot recover upon the bond, we do not deem it necessary to discuss these two remaining questions.

It therefore follows that the trial court did not err in sustaining respondent's demurrer to the complaint. The judgment of the trial court is affirmed. Costs are awarded to respondent.

Sullivan, C. J., and Morgan, J., concur.