(May 31, 1919.)

## MARK P. MILLER MILLING COMPANY, a Corporation, Appellant, v. BUTTERFIELD-ELDER IMPLEMENT COMPANY, LTD., a Corporation, Respondent.

[181 Pac. 703.]

CONVERSION OF CHATTELS—SALES—PASSING OF TITLE—EXECUTORY CONTRACT.

1. In an action for conversion, the plaintiff must rely upon the strength of his own title and not upon the weakness of that of his adversary.

2. Whether a contract for sale of chattels is to be considered executed or executory is to be determined by the intention of the parties.

3. The intention of the parties to a contract is to be gathered from the language thereof, if unambiguous; otherwise, by its letter in the light of such circumstances as may properly be considered in determining the intention of the parties.

4. When the terms of a contract of sale are undisputed, and the attendant circumstances are agreed upon, the question of the intent of the parties in respect to the passing of title, is, generally speaking, one of law for the court.

5. The usual test as to whether a contract of sale is executed or executory is to consider at whose risk the subject matter of the contract is prior to actual delivery to the buyer. If the risk of loss from injury to or destruction of the property is on the buyer the contract is executed, and if on the seller it is executory.

[As to measure of damages for conversion of, or failure to deliver, household goods, see note in **Ann. Cas.** 1917B, 585.]

APPEAL from the District Court of the Second Judicial District, for Latah County. Hon. Edgar C. Steele, Judge.

Action for conversion. Judgment of nonsuit. *Affirmed.*

Frank L. Moore, for Appellant.

In construing a contract the intent of the parties thereto must control in the absence of fraud. (*Twin Falls Orchard & Fruit Co. v. Salsbury*, 20 Ida. 110, 117 Pac. 118; *Tilden v. Hubbard*, 25 Ida. 677, 138 Pac. 1133.)

Orland & Lee, for Respondent.

In an action for conversion, the plaintiff must recover upon the strength of his own title and not upon the weakness of his adversary. (38 Cyc. 2048; *Union Stock Yards & T. Co. v. Mallory etc. Co.*, 157 Ill. 554, 48 Am. St. 341, 41 N. E. 888, 889; *Holmes v. Bailey*, 16 Neb. 300, 20 N. W. 304.).

Until all that was required to be done had been done, the contract continued executory, and as it never was fully executed, the appellant had no title or right to possession of the wheat in controversy. (*Welter v. Hill*, 65 Minn. 273, 68 N. W. 26, 27; *Rider v. Kelley*, 32 Vt. 268, 76 Am. Dec. 176, 177; *Bates v. Smith*, 83 Mich. 347, 47 N. W. 249.)

RICE, J.—On June 22, 1914, the appellant and one C. H. Sutton entered into the following contract in writing:

"I have today sold to M. P. Miller Milling Co., for delivery on or before Nov. 1, 1914, Ten Thousand No. 1 Red (10,000) bushels of No. 1 Red Russian wheat, at the price of (66¢) Sixty-six cents per bushel in the warehouse of Mark P. Miller

at Moscow, Idaho, and hereby acknowledge having received on said sale, as earnest money, the sum of One Dollar ($1.00) Dollars.

"It is Agreed and Understood, that the price of sixty-six ( ) cents mentioned, is for No. 1 Red Russian wheat, equal to the Washington State Standard now in effect, but off-grade wheat of the same variety will be received against this sale at the customary discount for such wheat.

"C. H. SUTTON,

"Seller.

"Confirmed:

"M. P. MILLER MILLING CO.

"By M. P. MILLER, Pres."

Sutton was a farmer, and had then growing a large acreage of wheat in Latah county. The growing crop was then encumbered by two chattel mortgages, which specified the particular land upon which the crop was growing. The respondent was mortgagee of the second of the two mortgages. About Sept. 4, 1914, the grain described in the mortgages was sold by respondent mortgagee, with the consent and upon the order of Sutton, to one Gibson, and thereafter delivered to him.

Trial was had to a jury. Appellant was permitted, over objection of respondent, to submit oral testimony to the effect that the wheat referred to in the contract of sale was the same as that covered by the mortgages. A judgment of nonsuit was entered, from which this appeal is prosecuted.

In an action for conversion, the plaintiff must rely upon the strength of his own title and not upon the weakness of that of his adversary. (38 Cyc. 2048.) In this action, it was necessary for appellant to show that title to the property in question had passed to him and that he was entitled to the possession thereof at the time of the alleged conversion.

Whether a contract of sale is to be considered executed or executory is to be determined by the intention of the parties. (*Idaho Imp. Co., Ltd., v. Lambach*, 16 Ida. 497, 101 Pac. 951.) But that intention is to be gathered from the language of the

contract (*United States v. Woodruff*, 89 U. S. 180, 22 L. ed. 863, see, also, Rose's U. S. Notes; *Smith v. Edwards*, 156 Mass. 221, 30 N. E. 1017), if the language of the contract is unambiguous; otherwise, by its letter in the light of such circumstances as may properly be considered in determining the intention of the parties. (*State ex rel. Pittsburg Coal Co. v. Patterson*, 138 Wis. 475, 120 N. W. 227.) When the terms of an agreement of sale are undisputed, and the attendant circumstances are agreed upon, the question of the intent of the parties in respect to passing title is, generally speaking, one of law for the court. (*Sempel v. Northern Hardwood Lumb. Co.* (on rehearing), 142 Iowa, 586, 121 N. W. 23.)

An examination of the contract in this case leads inevitably to the conclusion that it was not the intention of the parties that title to the wheat should pass to the appellant until the same should be delivered at the warehouse of Mark P. Miller at Moscow.

It will be observed that the contract was merely for 10,000 bushels of No. 1 Red Russian Wheat. The delivery of any wheat, wherever grown of the variety and grade specified, would fulfil the contract. If it were permissible to offer evidence to prove that the intention was to describe the wheat covered by the mortgages, the contract must still be considered executory.

By its terms, the sale was for delivery on or before Nov. 1, 1914, and the price was 66¢ per bushel in the warehouse of Mark P. Miller at Moscow. It was shown by the evidence that the crop of wheat produced less than 10,000 bushels, or to be exact 8,191 bushels. The terms of the agreement may not be varied by parol evidence. Had Sutton delivered the 8,191 bushels to appellant, he would not have fulfilled his contract. On the other hand, had the crop exceeded 10,000 bushels, the contract would have been fulfilled by the delivery of any 10,000 bushels thereof. Furthermore, the price fixed in the agreement was for wheat delivered in the warehouse at Moscow. Had there been a loss of the crop before delivery, it could not be contended that the loss would have been that

of appellant. Appellant was not obliged to pay until delivery at the warehouse was accomplished, and in case of prior destruction, delivery could not have been made.

"The usual decisive test as to whether the contract is executed or executory is to consider at whose risk the subject matter of the contract is prior to the actual delivery to the buyer; if the risk of loss from injury to or destruction of the property is on the buyer the contract is executed, and if on the seller it is executory." (23 R. C. L. 1346.)

The judgment is affirmed. Costs awarded to respondent.

Morgan, C. J., and Budge, J., concur.