283 P.2d 587

Carl RUDEEN and Ezilda Rudeen, Plaintiffs-Appellants,

v.

Dean HOWELL, Defendant-Respondent.

No. 8101.

Supreme Court of Idaho.

May 3, 1955.

Robert D. Wennergren, Moab, Utah, Anderson & Anderson, Pocatello, for appellants.

Black, Black & Oliver, Jones, Pomeroy & Jones, Pocatello, for respondent.

PORTER Justice.

On and prior to August 1, 1947, appellants were the holders of four certain leases of Indian lands located in Power County. Two of the leases were called Farming and Grazing Leases. One of the Farming and Grazing Leases was for the term beginning April 1, 1943, and ending February 29, 1948, and covered 2,101.34 acres. The second of such leases was for the term from March 1, 1946, to February 28, 1948, and included 480 acres of land. Two of the leases held by appellants were called Agricultural Leases. The Agricultural Leases were for terms beginning April 1, 1943, and ending February 29, 1948. The two leases covered 1,899.93 acres. The total acreage covered by all the leases was 4,481.27 acres of which approximately 2,950 acres were tillable.

In the spring of 1947 bids were asked for new leases on approximately these same lands. Both appellants and respondent bid for the new leases and the respondent was the successful bidder. In pursuance of the terms of the bids, the new leases to respondent contained the following provision:

"Occupancy. Some 1400 acres of the land described herein (and including land described in tribal lease SB 287) is now in wheat stubble and will be available to the lessee on August 1, 1947, for summer fallow purposes. The remainder of the area, including grazing land and that portion now planted to wheat will be available to the successful bidder on March 1, 1948." . . . .

The Farming and Grazing Leases held by appellants contained the following clause:

"Surrender Clause Permitting Seeding Fall Small Grain. It is understood and agreed that the lessee will surrender, without cost, the stubble land and other land in suitable condition on which he has no growing crop, to be seeded to fall grain or alfalfa five months prior to the expiration of the lease, when the lease expires at the close of the calendar year; or, prior to the expiration of the year when the lease expires on or before April 1st of the following calendar year."

It is agreed by the parties that the usual, customary and practical way of dry farming the lands in question is to crop one-half the land each year and to let the other one-half of the land lie idle and fallow; and that such fallow land is usually plowed and planted in August or September of one year and the ensuing crop harvested the next year.

In the fall of 1945, appellants planted approximately 1,450 acres of the land in fall wheat and harvested the crop of wheat grown on the land in the summer of 1946. Such land was not put in crop in the fall of 1946, but was allowed to lie idle and would normally be sowed to crop again in the fall of 1947. However, there was some volunteer wheat of disputed value growing on such land in the summer of 1947 which appellants were permitted to harvest.

On August 1, 1947, in pursuance of his leases, respondent was put in possession by the Indian Agent at Fort Hall, against the will of appellants, of such 1,450 acres of land for the purpose of preparing and planting the same to crop. Thereafter, on July 26, 1950, this action in trespass for damages to pasture and crops was instituted by appellants. Upon the trial of the cause the trial court made findings of fact and conclusions of law favorable to respondent and entered judgment accordingly. From such judgment this appeal has been taken.

Appellants set out numerous assignments of error dealing largely with alleged defective or insufficient findings of fact or findings allegedly not supported by the evidence, and, particularly, attacking the findings of fact in connection with damages. However, in our view of the case the correct construction of the surrender clause in the Farming and Grazing Leases is conclusive in this action and makes unnecessary a discussion of the alleged errors in connection with damages.

There was no definite showing by appellants that respondent entered upon any lands other than those covered by the Farming and Grazing Leases; and the court specifically found that respondent entered only upon such lands. Furthermore, there is no evidence in the record allotting or attempting to allot the claimed damages as between the lands covered by the Agricultural Leases and the lands covered by the Farming and Grazing Leases.

■ Appellants contend that under the surrender clause in the leases they were entitled to retain possession of the farming and grazing lands at least until December 31, 1947. On the other hand, respondent contends that under such clause he was entitled to possession of the stubble land on August 1, 1947, for the purpose of putting the same in crop. The surrender clause is ambiguous in this respect and is subject to construction to determine the meaning and intent of the parties. Durant v. Snyder, 65 Idaho 678, 151 P.2d 776; Molyneux v. Twin Falls Canal Co., 54 Idaho 619, 35 P.2d 651, 94 A.L.R. 1264.

■■ In construing an ambiguous provision in a contract, in order to determine the intent of the parties, the court may consider the object and purpose of the provision. Clarke v. Blackfoot Water Works, 39 Idaho 304, 228 P. 326; Caldwell State Bank v. First Nat. Bank, 49 Idaho 110, 286 P. 360; Wilson v. Fackrell, 54 Idaho 515, 34 P.2d 409; Bratton v. Morris, 54 Idaho 743, 37 P.2d 1097. "In construing an ambiguous contract, the object to be attained should be given prime consideration." Glover v. Spraker, 50 Idaho 16, 292 P. 613, 616.

■ Furthermore, to determine the intent of the parties, in construing the ambiguous provision, the court may consider the surrounding circumstances out of which the provision arose. Sauve v. Title Guaranty & Surety Co., 29 Idaho 146, 158 P. 112; Mark P. Miller Milling Co. v. Butterfield-Elder Implement Co., 32 Idaho 265, 181 P. 703; Wood River Power Co. v. Arkoosh, 37 Idaho 348, 215 P. 975.

■ The pertinent surrounding circumstances herein are that it was proper and customary to farm only one-half of this dry land each year and that one-half of the land was ordinarily prepared and planted in August or September of one year for the purpose of raising a crop the next year. It seems obvious that the object and purpose of the surrender clause was to permit the new lessee to prepare and plant the stubble land in the fall of the last season of the term of the old leases in order that such land would not lie idle for two years instead of one year; and that the Indian beneficiaries would not be thereby deprived of one year's rental.

To construe the surrender clause as contended for by appellants would defeat its purpose and make it in effect surplusage. Such construction would only change the surrender date from February 29, 1948, to December 31, 1947, a date too late for planting a crop to be harvested in 1948. We construe the surrender clause to mean as contended by respondent that he was entitled to the possession of the stubble land on August 1, 1947, for the purpose of preparing and planting the same to crop.

This construction of the surrender clause is decisive of the case and renders unnecessary a discussion of the court's findings on

the alleged damages. The judgment of the trial court is affirmed. Costs to respondent.

TAYLOR, C. J., and KEETON, ANDERSON and SMITH, JJ., concur.