(March 29, 1923.)

## THE IDAHO PRODUCTS COMPANY, a Corporation, Appellant, v. FRANK P. BALES, Respondent.

[214 Pac. 206.]

CONTRACT OF SALE—QUESTION AS TO WHETHER CONTRACT EXECUTED OR EXECUTORY — CONFLICT BETWEEN PRINTING AND WRITING — PASSING OF TITLE—INTENTION OF PARTIES—STATUTORY CONSTRUCTION.

1. In a contract for the sale of goods which is free from ambiguity, the question as to whether the title to the goods passed from vendor to vendee at the time agreement was signed depends upon the intention of the parties, which intention is to be determined from the terms of the contract itself, the conduct of the parties and circumstances of the case.

2. Where a contract is partly printed and partly written, as in the use of printed forms, and there is a conflict between the printing and the writing, the writing will prevail. (C. S., sec. 5669.)

3. A test as to whether a contract of sale is executed or executory may be applied by considering at whose risk the subject matter of the contract remains prior to actual delivery to the buyer. A clause in the contract obligating the seller to insure the goods at his own expense up to the time of shipment indicates that the parties intended something still to be done before title passed, and that the contract accordingly was executory.

4. Where the terms of an agreement of sale are undisputed and the attendant circumstances agreed upon, the question of the intent of the parties as regards the passing of title is ordinarily a question of law for the court.

5. Where the specific goods described in a contract of sale are in a deliverable condition, but there still remains some act to be done, like weighing, measuring or testing, where the price is to depend upon the quantity or quality of the goods, the title ordi-

Publisher's Note.

1. Passing of title under contract for sale of goods to be produced or manufactured, see note in 50 L. R. A., N. S., 113.

3. Effect on passing of title on sale of agreement by one party to insure goods, see note in **Ann. Cas.** 1914B, 708.

narily will not pass, in the absence of evidence of an intention to the contrary, until such act is done.

6. C. S., secs. 5691 and 5748, substantiating the general law, referring to contracts to sell specific goods in a deliverable state, must be construed together, and under a contract for the sale of "strictly Number One merchantable hay," until hay of that grade was segregated it was not in a deliverable state within the meaning of the statute.

7. The question of the reasonableness of the time given to a buyer of hay under a contract of sale, within which to remove the hay and pay for the same under his option to purchase, is a question of fact for the jury.

APPEAL from the District Court of the Seventh Judicial District, for Canyon Conuty.    Hon. Ed. L. Bryan, Judge.

Action in conversion.    Judgment for defendant.    *Affirmed.*

Johnson & Nixon and W. C. Bicknell, for Appellant.

Under the agreement of sale, the title to the hay passed to plaintiff. This was a question of law for the court. (*Miller Co. v. Butterfield Co.*, 32 Ida. 265, 181 Pac. 703; *Olin Co. v. Lambach*, 35 Ida. 767, 209 Pac. 277; *Lassing v. James*, 107 Cal. 348, 40 Pac. 534; *Yick Sung v. Herman*, 2 Cal. App. 633, 83 Pac. 1089; C. S. 5691.)

Buckner & Warren, for Respondent.

Where anything remains to be done by either party to the transaction before delivery—as, for example, to determine the price, quality, quantity or identity of the thing sold—the title does not vest in the buyer, but the contract is merely executory; and if anything remains to be done by the seller which is material or important before the buyer can identify or possess the thing sold, or before it becomes deliverable, the sale is executory and incomplete and the property does not pass absolutely to the buyer. (*Portland Seed Co. v. Clark*, 35 Ida. 44, 204 Pac. 146; *Clinton Sheep Co. v. Ogee*, 34 Ida. 22, 198 Pac. 675; *Brown v. Herrick*, 34 Ida. 171, 200 Pac. 117; *Miller Milling Co. v. Butterfield-*

36 Idaho.—51

*Elder Implement Co., Ltd.,* 32 Ida. 265, 181 Pac. 703; *Idaho Implement Co. v. Lambach,* 16 Ida. 497, 101 Pac. 951; *Lauber v. Johnston,* 54 Wash. 59, 102 Pac. 873; note to *Barber v. Andrews,* 29 R. I. 51, 69 Atl. 1, 26 L. R. A., N. S., 1; 24 R. C. L. 279–282, pp. 18–22; *Elgee Cotton Cases,* 22 Wall. (U. S.) 180, 22 L. ed. 863; 35 Cyc. 283–288, note 56.)

The contract is executory and no title passes where the hay is to be separated from a larger bulk to obtain a specified grade, until the hay is separated from the mass and specifically appropriated and identified as the particular subject of the sale. (*Olin Co. v. Lambach,* 35 Ida. 767, 209 Pac. 277; *Clinton Sheep Co. v. Ogee, supra;* 26 L. R. A., N. S., 57, and note; *Idaho Implement Co. v. Lambach, supra; Lauber v. Johnston,* 54 Wash. 59, 102 Pac. 873; 35 Cyc. 291, 292, and note 42.)

If the contract is ambiguous, the question as to whether the sale was complete or the contract merely executory under the evidence is then a matter for the jury. Such a question is one of the intention of the parties. (*Clinton Sheep Co. v. Ogee, supra; Idaho Implement Co. v. Lambach, supra; Miller Milling Co. v. Butterfield-Elder Implement Co., supra.*)

"Where the buyer has been in default in the payment of the price an unreasonable time, an unpaid seller having the right of lien or having stopped the goods in transitu may resell the goods." (C. S., sec. 5732; note to *White Walnut Co. v. Crescent Coal Co.,* 254 Ill. 368, 98 N. E. 669, 42 L. R. A., N. S., 677; 24 R. C. L., secs. 376–378, incl., pp. 109–111.)

Where the sale is of unidentified property which is later to be produced and put in a deliverable state, no title passes until delivery and acceptance, and the completion or production of the article itself has no operative effect to transfer the title to the buyer, but there must be an acceptance or approval of the article by him, unless a contrary intention on the part of the parties is apparent. (*Portland Seed Co. v. Tom Clark, supra; Clarkson v. Stevens,* 106 U. S. 105, 1 Sup. Ct. 200, 27 L. ed. 139; note, 50 L. R. A., N. S., 122;

note to *King v. Marman*, 35 Ark. 190, 37 Am. Rep. 16; 24 R. C. L. 33–35; 35 Cyc. 288, and note 1.)

BUDGE, C. J.—This action was brought to recover damages for the conversion of certain hay. Appellant, on October 15, 1919, entered into a contract with J. W. Watson, which is as follows:

"Original.                                                    No. 505.
    "AGREEMENT FOR THE SALE OF HAY CROP.

"This Agreement, made and entered into this 15 day of October, 1919, by and between J. W. Watson of Greenleaf, State of Idaho, party of the first part, hereinafter referred to as the Grower, and the Idaho Products Company, a corporation, with its principal place of business at Boise, Idaho, party of the second part, hereinafter referred to as the Buyer, Witnesseth:

"That the Grower has this day sold to the Buyer all of his strictly Number One, merchantable Alfalfa Hay, consisting of approximately 200 tons, now in stack or growing on that certain premises described as Old Conner Ranch and of which hay the Grower has the sole ownership and control; it being expressly understood and agreed that the Grower is to harvest and stack the said hay at the proper time and in the proper manner, and that the said hay is to be delivered to the Buyer in stack on the said premises, or to the baler on the said premises, as the Buyer may direct. It is also understood and agreed that the said Buyer is to be given the full privilege and such time as it may desire for the baling and removal of said hay from the stack or stacks and from the said premises.

"The Buyer hereby agrees to make payment to the said Grower for all hay purchased in accordance with this agreement at the rate of Fourteen 00/100 Dollars ($14.00) F. O. B. ranch, per ton of 2000 lbs., under the following terms, to wit: to be paid as loaded. One hundred 00/100 Dollars ($100.00) at the time of the execution of this agreement as earnest money, the receipt of which is hereby acknowledged.

The balance of the said purchase price less any other amounts advanced is to be paid upon the completion of loading on board cars for shipment.

"The Grower hereby agrees to insure the said hay at his expense up to and until time of shipment, and the policy of insurance shall provide that the loss, if any, shall be paid to the said Buyer as its interest may appear.

"It is further understood that the party of the first part agrees to be governed by the official standard of grades for the State of Idaho as established by the State Department of Agriculture in the grading of the said purchased hay, and in the event that the said party of the first part shall fail to produce hay of Number One grade as herein contemplated, said party of the first part agrees to accept such grading as hay will permit according to the rules of the State Department of Agriculture of Idaho as herein referred to.

"It is mutually understood and agreed that the foregoing contract expresses and contains all of the stipulations and agreements relating to the sale and purchase of said hay and that no verbal representations made by any agent or representative of said Buyer shall in any manner affect the said agreement.

"IN WITNESS WHEREOF, The said Grower has hereunto set his hand and seal in triplicate and said Buyer has caused its corporate name to be hereunto subscribed by its duly authorized agent the day and year of this agreement as above written.

"J. W. WATSON,   (Seal)

"Grower.

"IDAHO PRODUCTS COMPANY,

"By C. HARDIES,

"Its Agent."

From the record it appears that one Percy Trunnell had an interest in the hay and that on December 8, 1919, he wrote appellant and ratified the contract entered into between Watson and appellant. On December 16, 1919, appellant entered into a contract with Sanford Evans & Company to

furnish 200 tons of hay at $28 per ton to be shipped from Caldwell, Idaho. Appellant claimed damages for the conversion of the hay and special damages by reason of the fact that it was compelled to pay $30 per ton to fill the order of Sanford Evans & Company. On December 27, 1919, Watson sold the hay in question to respondent, at which time he notified respondent of his contract with appellant. Respondent completed the baling and shipment of the hay on January 8, 1920.

The cause was tried to the court and jury. A verdict was rendered in favor of respondent and judgment entered thereon. A motion for new trial was made and overruled and this appeal is from the order overruling the motion.

The principal question here presented is whether the title to the hay in question passed from Watson to appellant when the agreement was signed. The agreement, as we view it, is free from ambiguity, which being true, the intention of the parties should be determined from the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case.

It is stipulated in the agreement, *inter alia,* that Watson " . . . . has this day sold to the Buyer all of his strictly Number One, merchantable Alfalfa Hay, consisting of approximately 200 tons, now in stack. . . . . it being expressly understood and agreed . . . . that the said hay is to be delivered to the Buyer in stack on said premises, or to the baler on the said premises, as the Buyer may direct."

There is no evidence that the appellant exercised its right under the contract to direct that the hay be delivered in the stack or to the baler. Under the terms of the agreement, appellant obligated itself to accept only such alfalfa hay as was strictly Number One in quality, and it is further stipulated, in the manner of the grading of the hay, that Watson was to be governed by the official standard of grades for the state of Idaho as established by the State Department of Agriculture. Should the hay as graded fall within any class or grade other than strictly Number One merchantable alfalfa hay, Watson, under the terms of the

contract, agreed to be bound by such grading. The contract also provides that appellant agreed to make payment to Watson for all of the hay purchased, at the rate of $14 per ton, "F. O. B. ranch . . . . to be paid as loaded." In other words, the hay was to be delivered at the ranch and to be paid for as loaded, rebutting the idea that delivery had already been made. Something yet remained to be done. This was to deliver the hay. The words "to be paid as loaded" are written into the contract in pencil and therefore control over that portion of the printed contract which provides that the hay was to be paid for "upon the completion of loading on board cars for shipment." (C. S., sec. 5669.)

We think it clear from the contract that the hay was to be delivered and paid for after being segregated, that is to say, appellant contracted to buy and to pay for only Number One merchantable alfalfa hay. The contract also provides that: "The grower hereby agrees to insure the said hay at his expense up to and until time of shipment, and the policy of insurance shall provide that the loss, if any, shall be paid to the said Buyer as its interest may appear."

If the title to the hay passed immediately upon the signing of the contract, Watson had no insurable interest. In effect, appellant in this clause of the contract said to Watson: "There is still something to be done before the title to this hay passes; therefore, in order to protect your interest in the hay, as well as the amount that we have advanced, it will be necessary for you, at your expense, to insure the hay." Had the hay burned or become otherwise destroyed, the destruction and payment thereof falling within the terms of the policy, the buyer's interest would be measured by the amount advanced on the purchase price of the hay and Watson would have received the value of the hay ultimately ascertained, less the amount so advanced. While this hay may not have been insured, in ascertaining the intention of the parties, that fact becomes immaterial.

It was held in the case of *M. P. Miller Co. v. Butterfield-Elder Co.*, 32 Ida. 265, 181 Pac. 703: "The usual test as to

whether a contract of sale is executed or executory is to consider at whose risk the subject matter of the contract is prior to actual delivery to the buyer. If the risk of loss from injury to or destruction of the property is on the buyer, the contract is executed, and if on the seller it is executory.''

See, also, to the same effect, 23 R. C. L. 1346.

Where the contract is free from ambiguity and is uncontroverted, the intention of the parties as to whether the contract was executed or executory is ordinarily a question of law for the court. (*M. P. Miller Co. v. Butterfield-Elder Co., supra.*)   It was said in that case: ''Whether a contract of sale is to be considered executed or executory is to be determined by the intention of the parties. (*Idaho Imp. Co., Ltd., v. Lambach,* 16 Ida. 497, 101 Pac. 951.)   But that intention is to be gathered from the language of the contract (*United States v. Woodruff,* 89 U. S. 180, 22 L. ed. 863, see, also, Rose's U. S. Notes; *Smith v. Edwards,* 156 Mass. 221, 30 N. E. 1017), if the language of the contract is unambiguous; otherwise by its letter in the light of such circumstances as may properly be considered in determining the intention of the parties. (*State ex rel. Pittsburg Coal Co. v. Patterson,* 138 Wis. 475, 120 N. W. 227.)   When the terms of an agreement of sale are undisputed, and the attendant circumstances are agreed upon, the question of the intent of the parties in respect to passing title is, generally speaking, one of law for the court. (*Sempel v. Northern Hardwood Lumb. Co.* (on rehearing,) 142 Iowa, 586, 121 N. W. 23.)''

As we read the contract, it provides for the sale of strictly Number One merchantable hay only, the amount to be ascertained by grading according to the rules of the State Department of Agriculture, to be delivered, at the option of the buyer, in the stack, or at the baler, wherever the baler might be placed. It is therefore clear that there was neither a delivery nor acceptance of any specific amount of hay. This being true, we think the question here to be decided falls within the rule as announced by Mechem on Sales, sec. 501:

"Where, though the specific goods are in a deliverable condition, there still remains some act like measuring, weighing or testing in order to determine the price, where the price is to depend upon the quantity or quality of the goods, the title usually will not pass in the absence of evidence of an intention to the contrary until this act is done."

It therefore remained within the power of the buyer to refuse to accept the hay as strictly Number One merchantable alfalfa hay in the event the same did not fall within that grade as established by the Department of Agriculture. By this contract the buyer contracted for no other grade of hay than was strictly Number One merchantable hay.

If we are correct in the construction given to the terms of the contract there was no acceptance by the buyer of the hay until it was graded. There being no acceptance of the hay unconditionally, the title to the same did not pass when the contract was signed and the same was therefore an executory and not an executed contract for the sale of the hay. Not only is this true, but the hay was not delivered for the reason that the buyer did not direct that the hay should be delivered in the stack or to the baler, and it is clear to our minds that it was not within the intention of the parties that there should be a delivery.

Appellant calls attention to Rule 1, C. S., sec. 5691, and insists that the same is applicable to the instant case. It reads as follows: "Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment or the time of delivery or both, be postponed."

This section must be construed and read in connection with C. S., sec. 5748, subd. 4, which reads as follows: "Goods are in a 'deliverable state' within the meaning of this law when they are in such a state that the buyer would, under the contract, be bound to take delivery of them."

Appellant contracted for "strictly Number One merchantable hay" and under the contract it could not be compelled to take delivery of hay other than that grade, and until hay of that grade was segregated it was not in a deliverable state. The sections of the statute last quoted did not go into effect till January 1, 1920, subsequent to the execution of the contract herein, and may be said not to be controlling. However, we think such statutes substantiate the general law.

The contract was signed on October 15, 1919. The record discloses that Watson, at numerous times, practically up to the date of the sale to respondent, made every possible effort to induce appellant to bale and ship the hay. This it refused and neglected to do or to make any other or further advances on the purchase price or to send a baler to the ranch in order that the hay might be baled and shipped, but immediately after the hay was sold to respondent, appellant evidenced an unusual desire to obtain the hay, the market price in the meantime gradually rising. Under no theory of the case can it be held that Watson was to remain in possession of the hay for the benefit of appellant and obligated to deliver it to it at an unreasonable time after the contract was signed or merely at its pleasure. Watson held the hay from October 15, 1919, until December 27, 1919, which we think was beyond a reasonable time under the facts and circumstances of this case.

The question of the reasonableness of the time given to appellant to remove the hay and pay the balance under its option was squarely submitted to the jury and decided adversely to appellant, and we are not disposed to disturb their verdict.

From what has been said it follows that the judgment of the court below must be affirmed, and it is so ordered. Costs are awarded to respondent.

Dunn and Wm. E. Lee, JJ., concur.