(No. 4802. December 24, 1927.)

WESTERN SEED MARKETING COMPANY, a Corporation, Appellant, v. EMMITT PFOST, Sheriff of Ada County, Idaho, Respondent.

[262 Pac. 514.]

CHATTEL MORTGAGES—SALE OF CHATTELS—CONSENT OF MORTGAGEE—WAIVER OF LIEN — CLAIM AND DELIVERY — CONTRACT OF SALE — TEST AS TO WHETHER CONTRACT IS EXECUTED OR EXECUTORY—CASH SALE.

1. Where there was recorded mortgage covering growing crop, it was incumbent on purchaser of crop, in action in claim and delivery, to prove that consent to sale was actually given by mortgagee and that it was unconditional.

2. General rule is that, where mortgagee consents to sale of mortgaged chattels by mortgagor, he waives lien of his mortgage and purchaser takes title free of mortgage lien.

3. Sale of mortgaged chattels will not be valid as against mortgagee, when consent of mortgagee is qualified and on condition which purchaser has promised but failed to perform.

4. Where mortgagee of growing crop did not consent to sale except on payment of mortgage, such mortgagee on foreclosure was entitled to take possession of crop and sell it through agency of sheriff so that claim and delivery action could not be maintained against sheriff by purchaser.

5. Chattel mortgagee may waive lien or be estopped to enforce it by conduct inconsistent with its existence.

6. In action for claim and delivery, it is incumbent on plaintiff to establish its right of possession on strength of its own title and not weakness of defendant's title.

7.   Title or right to possession is essential prerequisite to action in "claim and delivery."

8.   Test as to whether contract of sale is executed or executory may be applied by considering at whose risk subject matter of contract remains prior to actual delivery to buyer.

9.   Contract for sale of crop *held* executory so that buyer, having no right to possession, could not maintain action in claim and delivery, where such buyer was not entitled to crop till payment was made, and he made no payment in full nor tender of such payment.

10.   Where, under contract of sale, buyer is not entitled to subject matter till payment is made, law presumes "cash sale," which is one where payment and delivery are to be concurrent.

APPEAL from the District Court of the Third Judicial District, for Ada County.   Hon. Clinton H. Hartson, Judge.

Action in claim and delivery.   Judgment for defendant. *Affirmed.*

S. L. Tipton and P. E. Cavaney, for Appellant.

The mortgagee waives his lien where he consents to the sale of the mortgaged property.   (*Knollin v. Jones,* 7 Ida. 466, 63 Pac. 638; *Farmers' State Bank of Star v. Gray,* 36 Ida. 49, 210 Pac. 1006; *Blackfoot City Bank v. Clements,* 39 Ida. 194, 226 Pac. 1079; *Bellevue State Bank v. Hailey*

Publisher's Note.

1.   Implied authority of mortgagor to sell mortgaged goods, see note in **Ann. Cas.** 1913D, 586.   See, also, 5 R. C. L. 445.

2.   Consent to sale of property by mortgagor after the mortgage is given as waiver of lien, see note in 43 L. R. A., N. S., 302.   See, also, 5 R. C. L. 445.

7.   Replevin, see note in 80 **Am. St.** 741.   See, also, 23 R. C. L. 864.   General rules as to title necessary to support replevin, see note in 1 **Ann. Cas.** 984.   See, also, 23 R. C. L. 864.

See Chattel Mortgages, 11 **C. J.**, sec. 339, p. 624, n. 35, p. 625, n. 44, 45, p. 626, n. 55; sec. 352, p. 636, n. 76; sec. 441, p. 674, n. 18.

Replevin, 34 **Cyc.**, p. 1385, n. 51, p. 1386, n. 53.

Sales, 35 **Cyc.**, p. 265, n. 9, 12, p. 276, n. 1, p. 302, n. 19, 20, p. 612, n. 78, p. 614, n. 5.

*National Bank,* 37 Ida. 121, 215 Pac. 126; *Adamson v. Moyes,* 32 Ida. 469, 184 Pac. 849; *Carr v. Brawley,* 34 Okl. 500, 125 Pac. 1131, 43 L. R. A., N. S., 302, and note.)

A sheriff can be sued and is liable in an action in claim and delivery. (*Blackfoot City Bank v. Clements, supra; Knollin v. Jones, supra; Dobbins v. Mounce,* 5 Ida. 325, 48 Pac. 1070; *Saxton v. Breshears,* 21 Ida. 333, 121 Pac. 567; *Hatch v. Standard Oil Co.,* 100 U. S. 124, 25 L. ed. 554.)

Wm. Healy, for Respondent.

Plaintiff in replevin must recover on the strength of his own title, not on the weakness of the title of the defendant. (*Mountain Home Sheep Co. v. Faraday,* 36 Ida. 633, 212 Pac. 970.)

Conditional assent by mortgagee to sale of mortgaged chattels does not constitute waiver of mortgage lien, unless condition is complied with, where purchaser has knowledge of and acquiesces in the condition. (*Oswald v. Hayes,* 42 Iowa, 104; *Murphy v. Currie,* 21 Wash. 232, 57 Pac. 795; *Bailey v. Costello,* 94 Wis. 87, 68 N. W. 663; *Trabue v. Wade* (Tex. Civ. App.), 95 S. W. 616; *Monison v. Renaker* (Ky.), 60 S. W. 924; *Dodson v. Dedman,* 61 Mo. App. 209.)

Purchaser of personal property cannot, where contract is still executory, maintain replevin for it. (*Bertelson v. Van Deusen,* 37 Ida. 199, 217 Pac. 983.)

Sheriff must execute process regular and fair on its face, and is protected in so doing. (C. S., sec. 3607; *Peterson v. Merritt,* 25 Ida. 324, 137 Pac. 526.)

Officer is protected in the execution of specific process, as distinguished from general process, if he literally obeys the injunctions of the process. (*Conner v. Long,* 104 U. S. 228, 26 L. ed. 723.)

ADAIR, Commissioner.—This action was instituted against Emmitt Pfost, as sheriff of Ada county, to recover possession of certain alfalfa seed, levied upon by him in a summary chattel mortgage foreclosure proceeding commenced by the Grandview State Bank against one J. L. Thams.

The case was tried without a jury, and the appeal is from a judgment in favor of Pfost.

There are eleven assignments of error, but it will be necessary to consider. only two questions in the determination of this cause. The appellant, in writing, contracted to purchase from Thams certain Grimm alfalfa seed which was then growing on lands farmed by Thams, and which seed was to be cleaned before delivery to, and payment by, the purchaser. Prior to the making of this contract, Thams executed a chattel or crop mortgage upon this seed crop to the bank above mentioned, and a representative of appellant had talked with an officer of the bank about the mortgage and the contemplated purchase of the crop. Exactly what agreement was made between these parties is not satisfactorily disclosed by the testimony, but the inference therefrom is that the bank consented to the sale, upon the condition that the proceeds should be applied on the mortgage indebtedness of Thams to it. The crop was harvested, and later transported to Boise and cleaned according to contract. The appellant then attempted to settle therefor by issuing its check payable jointly to Thams and the bank, but deducting from the total amount due on the purchase price of the crop $600 it had previously advanced to Thams and to the bank. Thams refused to accept the check unless made payable to him individually, and the mortgagee bank refused to accept it unless made for the full value of the crop, without any deductions. No settlement being made, the mortgagee finally commenced foreclosure proceedings. On the date fixed for the sale, appellant made demand on the sheriff for possession of the seed, and upon the refusal of that officer to comply with such demand this action was begun.

The court found that the mortgagee bank consented to the contract of sale, and this finding is in accord with the evidence. The court further found that "there is no sufficient evidence upon which to determine whether the said bank consented to the sale, subject to its mortgage lien, or whether the mortgage lien was waived." The only evidence

adduced in that regard was given by B. F. Sheehan, secretary of appellant corporation, and is as follows:

"Q. How did you know the State Bank had a mortgage?

"A. By the statement of Mr. Mullinix.

"Q. Who is Mr. Mullinix?

"A. Cashier of the Grandview State Bank.

"Q. What conversation did you have with him, if any, in relation to this mortgage? . . . .

"A. I visited Mr. Mullinix at the bank in Grandview upon two different occasions, each time having a thorough discussion with him relative to the status of Mr. Thams and the mortgage which was held by the bank.

"Q. On this seed?

"A. On this seed. And the question in our minds at the time was that Mr. Thams was very slow in the harvesting of his crop, and was already involved I think to the extent of $100 or $1200 ($120), and we saw difficulty in being able to finance him for more money for the harvesting and threshing expenses. We then agreed to advance as per contract such moneys as we were requested to assist in the financing of Mr. Thams in getting his stock (crop) to the market. . . . .

"Q. What further conversation did you have with Mr. Mullinix at that time regarding this stock (crop)? . . . .

"A. The only conversation that I recall is that we were very well satisfied with the deal, and were anxious to and we went in there to assist in the financing of the crop the same as we did and relieved the bank of financing Mr. Thams in the matter."

The first payment of $200 by the appellant on the purchase price of the seed was made to and received by the bank, and credited on the Thams indebtedness to that institution. The purchaser, when the amount of the purchase price was ascertained, insisted upon making its check payable jointly to Thams and to the mortgagee bank. Both of these circumstances indicate that it was understood that the consent to the sale was conditioned upon the bank's claim being protected. Appellant, in recognizing such claim,

gave its own construction or understanding of the agreement for the sale, and the acts of the mortgagee in reference thereto. While the court is correct in its finding that there is no direct evidence as to whether the consent was conditional or otherwise, these acts of the purchaser are peculiarly significant.

[1–3] In the face of the recorded mortgage, it was incumbent on the purchaser to prove that the consent to the sale was actually given, and that it was an unconditional one. This court has held that where a mortgagee consents to a sale of the mortgaged chattels by the mortgagor, he waives the lien of his mortgage, and the purchaser takes title free of the mortgage lien. (*Knollin v. Jones,* 7 Ida. 466, 63 Pac. 638; *Bellevue State Bank v. Hailey National Bank,* 37 Ida. 121, 215 Pac. 126.) This is a general rule universally upheld, and necessary for the protection of purchasers of mortgaged chattels who have relied upon such consent. However, it is likewise a well-recognized rule that a sale of mortgaged chattels will not be valid as against the mortgagee when the consent of the mortgagee is qualified and upon a condition which the purchaser has promised but failed to perform. (*Dodson v. Dedman,* 61 Mo. App. 209; *Oswald v. Hayes,* 42 Iowa, 104; *Bailey v. Costello,* 94 Wis. 87, 68 N. W. 663; *Monson v. Renaker* (Ky.), 60 S. W. 924; *Trabue v. Wade & Miller* (Tex. Civ. App.), 95 S. W. 616.)

[4, 5] It was not proved that the bank waived or agreed to waive its mortgage lien, or to forego it in any manner, except on payment thereof in full. A chattel mortgagee may waive his lien or be estopped to enforce it by conduct inconsistent with its existence. (*Smith v. Washburn-Wilson Seed Co.,* 40 Ida. 191, 232 Pac. 574.) In the instant case, the appellant did not contract to buy on the faith of any agreement of the bank to waive its mortgage. There was no such agreement, but on the contrary the inference is that the mortgagee expressly refused to do so. All the parties apparenty fully understood the entire transaction to be that the mortgagee was to be protected and paid. Under such circumstances, no estoppel arises against the mortgagee so

as to preclude it from insisting upon the validity of its mortgage lien. That being true, upon foreclosure the bank was entitled to take possession of the chattels, and sell the same through the agency of the sheriff, and the possession of that officer was legal, and the action against him in claim and delivery could not be maintained.

Even admitting that unconditional consent to the sale was given by the bank, still when it commenced foreclosure, before the sale to appellant was consummated, such consent was revoked. See *Saxton v. Breshears,* 21 Ida. 333, 121 Pac. 567, affirming the right of a chattel mortgagee to revoke a previously given consent to a sale, under facts very similar to those in the case now under consideration.

[6] There is another cogent reason why this action will not lie, and which is entirely independent of the question of consent hereinbefore discussed. In *Mountain Home Sheep Co. v. Faraday & Weaver,* 36 Ida. 633, 212 Pac. 970, this court has clearly stated the well-established principle that, in an action for claim and delivery, it is incumbent upon the plaintiff to establish its right of possession upon the strength of its own title, and not the weakness of defendant's title.

[7] Again, as stated in the syllabus in *Bertleson v. Van Deusen Bros. Co.,* 37 Ida. 199, 217 Pac. 983, this court held:

"An agreement to sell all the hay to be raised on certain premises during a certain year, at an agreed price, upon which a part payment is made, is merely an executory contract of sale, and does not vest title in the purchaser; so that, upon refusal of the seller to deliver the hay, the purchaser may sue for damages for failure to deliver, but not for possession of the property.

"Title or right to possession is an essential prerequisite to an action in claim and delivery."

[8, 9] The trial court found and concluded that—

"The contract for the purchase of the seed between plaintiff and the said Thams was an executory contract at the time of the seizure by the sheriff and at the time of the commencement of this action, and no completed delivery

of the seed had been made by said J. L. Thams to plaintiff under said contract to purchase.''

''If, under all the evidence, different minds might honestly reach different conclusions as to whether the sale was completed or merely an executory agreement to sell, then the question is one of fact, and should be left to the jury.'' (*Idaho Implement Co., Ltd., v. Lambach,* 16 Ida. 497, 101 Pac. 951.)

See, also, *Carlson v. Crescent Woodenware & Box Mfg. Co.,* 20 Ida. 794, 120 Pac. 460.

A test as to whether a contract of sale is executed or executory may be applied by considering at whose risk the subject matter of the contract remains prior to actual delivery to the buyer.  (*Idaho Products Co. v. Bales,* 36 Ida. 800, 214 Pac. 206.)

The sale contract under consideration here *inter alia* provided:

''In the event seed delivered contains foul seed that cannot be separated by ordinary cleaner, buyer has option of docking or rejecting entirely. In case seed be destroyed before delivery, grower or holder agrees to return amount advanced by buyer on date seed should have been delivered with interest from date advanced.

''Date of delivery, to be quickly as possible after threshing, by Dec. 15th, 1924, and the balance of purchase price to be paid when seed is accepted by buyer.''

[10]  By the terms of the contract, the seed was to be cleaned by the Central Coal & Seed Company, at Boise, and appellant was to pay for such service. The contract did not require delivery at that place, however, but in bags f. o. b. cars or warehouse at Boise, without specifying any particular warehouse. The purchaser did not even pay for cleaning the seed. The crop was delivered by Thams to the Central Coal & Seed Company, cleaned by it, placed in sacks with the name of Thams thereon, and kept there by that company with other seed purchased by appellant. That Thams was entitled to the seed until payment was made is not a question open to dispute. Under the terms

of this contract, the law presumes a cash sale; that is, payment and delivery were to be concurrent. Consequently, appellant was entitled to possession only upon payment in full or tender of the agreed price. No payment in full was made; neither was there any semblance of an attempt to make a tender. The Central Coal & Seed Company was the agent of neither party for the purpose of delivery, but was simply a bailee for hire, employed to render certain services in connection with the crop. While the act of signifying a willingness to issue a check in payment might indicate that the crop was satisfactory to the purchaser, there was no legal acceptance thereof as to quality. The purchaser never took actual manual possession. Had a fire or other loss occurred, Thams undoubtedly would have had to stand the loss. Under all the circumstances, it clearly appears that the finding of the trial court to the effect that the contract was still an executory one was correct, and in accord with the preponderance of the evidence. It follows, for this reason also, that this action cannot be maintained.

Because of the foregoing conclusions, which are decisive of this case, it will not be necessary to consider the other questions presented on this appeal. We recommend that the judgment be affirmed and that respondent recover his costs of appeal.

Babcock and Featherstone, CC., concur.

The foregoing is approved as the opinion of the court. The judgment is affirmed. Costs to respondent.

Wm. E. Lee, C. J., and Taylor and T. Bailey Lee, JJ., concur.