(No. 5910. April 5, 1933.)

D. N. PETERSON, Appellant, v. UNIVERSAL AUTOMOBILE INSURANCE COMPANY, Respondent.

[20 Pac. (2d) 1016.]

Geo. Donart, J. W. Galloway, Carl A. Burke and E. B. Smith, for Appellant.

Martin & Martin, for Respondent.

WERNETTE, J.—The facts in this case are substantially these: William P. Gilderoy, doing business as the Gilderoy Motor Company, on May 23, 1930, and for a long period prior thereto, was conducting a Chrysler automobile sales agency at Weiser, Idaho. From February 8, 1930, to May 23, 1930, he was the owner of the certain Chrysler automobile in question. On February 8, 1930, Gilderoy took out a policy of insurance, covering the automobile, with the respondent, Universal Automobile Insurance Company, insuring him against public liability while the automobile was being used, only, for private pleasure. This policy, covering a period of one year, was in full force and effect on May 23, 1930. The policy, among other things, contained the following provision:

"Statement 7. The above described automobile is and will be used only for Private Pleasure."

The policy also contained the usual coverage clause as follows:

"*Extended Coverage.* In addition to the Assured named in this policy, such insurance as is granted under Item 1 and/or Item 2 shall be available, in the same manner and under the same conditions and to the same extent as it is available to the Assured named herein, to any person or persons, except chauffeurs and domestic servants, while riding in or legally operating the automobile covered by this policy, and to any person, firm or corporation legally responsible for the operation thereof; but only while it is being used for the purposes specified in Statement 7 of the 'Schedule of Statements' and with the consent of the Assured named herein; or, if such Assured is an individual, of an adult member of his household who is not a chauffeur or domestic servant."

There was also contained in the policy the following provision:

"*Conditions, Limitations and Agreements. Change of Ownership*. A. All rights hereunder are strictly personal to the Assured named in this policy, and this policy shall terminate immediately if there is any change, voluntarily or otherwise, in the ownership or interest of such Assured in this policy or in the automobile insured hereunder; provided that if such change in interest be by reason of the death of the named Assured (if the Assured is an individual), this insurance shall continue in force for the benefit of his legal representatives until noon, Standard Time, of the day following the date of the death of the Assured, and for twenty-nine (29) days thereafter, unless the original term of the policy sooner expires or the policy be cancelled."

Until May 23, 1930, William P. Gilderoy and his wife, were using the automobile for pleasure purposes, only.

On May 23, 1930, appellant, D. N. Peterson, entered into negotiations with Mr. Gilderoy to purchase the automobile in question. Terms were agreed upon and a written conditional sales contract, or title note, was entered into between the appellant and the Gilderoy Motor Company, dated as of May 23, 1930. The conditional sales contract, or title note, stated, among other things, that the purchaser, who was the appellant, had on said date paid to the Gilderoy Motor Company, the seller, $490, which was to apply on the purchase price, and the purchaser further agreed to pay to the seller, or order, 18 instalments of $64.45 on the tenth day of each succeeding month, beginning July 10, 1930. The contract further contained the usual conditional sales contract provisions.

. The appellant at the time and place of execution of the written contract, and as part of the transaction, delivered to Mr. Gilderoy his personal check in the sum of $100. It was understood between the parties that the check was not to be presented for payment, at the bank on which it was drawn, until the following Monday, May 26, 1930.

It was contemplated by Gilderoy to finance the conditional sales contract, or note, with the Commercial Credit

Company of Boise, Idaho, which company had handled and financed practically all of Gilderoy's automobile contracts. On May 23, 1930, Gilderoy signed a guaranteed indorsement on the said conditional sales contract, and on the same day sent the indorsed contract, by mail, to the Commercial Credit Company. On the 24th of May, the Commercial Credit Company issued its check, in the sum of $980, in favor of the Gilderoy Motor Company, which check was mailed to Gilderoy but was not received by him until either the 25th or 26th of May, 1930. The record does not disclose when, on the 24th of May, the said check was issued, or when it was placed in the mail.

As soon as the appellant had signed the conditional sales contract, he was permitted to take possession of the automobile, and he drove in and about the city of Weiser on the afternoon of May 23d, and parked the automobile at his house the night of May 23d. In the morning of the following day, May 24th, he started to drive to the city of Boise, at which time, when near the town of Meridian, in Ada county, he collided with another car, operated and driven by one Frank Collard, seriously injuring Frank Collard and one Irving R. Collard, who was riding in the car with Frank Collard. The automobile driven by the appellant was also substantially damaged.

It appears from the oral testimony that in the event that the $100 check, delivered by appellant to Gilderoy, would not be honored on Monday, the day it was to be presented to the bank on which it was drawn, or in the event that the Commercial Credit Company refused to finance or purchase the conditional sales contract, that the appellant was to return the automobile to Gilderoy on Monday, following the 23d of May. The $100 check was paid, but on what date it is not disclosed. The conditional sales contract was accepted and purchased by the Commercial Credit Company, as heretofore stated.

The appellant did not return the automobile to Gilderoy, but continued in the possession of it from May 23, 1930, when it was first delivered to him, until a very short time

before the trial of this action in the district court, when he surrendered possession to Gilderoy because of default in making payments as provided for in the conditional sales contract.

Immediately after the appellant took possession of the automobile, and prior to the collision above mentioned, the appellant obtained insurance to protect him as to any damage resulting to the automobile, due to collision. The company from whom he obtained the insurance settled with him, and paid him for the damage to his automobile resulting from said collision.

On, or about, August 8, 1930, Frank Collard, who was injured as the result of the collision on May 24th, commenced an action in the district court of Washington county against the appellant, and eventually obtained judgment in the total sum of $801.40, which included the costs of the action. Irving R. Collard, likewise commenced action for damages he sustained, on account of injuries in said collision. This action brought by Irving R. Collard resulted in a judgment against the appellant, which together with costs, amounted to $1,101.40.

Shortly after the collision the respondent was notified thereof, and of the fact that Frank Collard, and Irving R. Collard, had each sustained personal injuries as a result of the collision on May 24th. Demand was made on the respondent by Frank Collard and Irving R. Collard, by reason of the insurance policy in question, for the damages they had respectively sustained. The respondent denied all liability under the terms of the policy of insurance. Respondent was further notified after the institution of the actions in Washington county, by the Collards, so as to give respondent the opportunity to defend the actions if it so desired. But the respondent refused to defend the actions, or either of them. Appellant, himself, employed counsel to defend the actions. Prior to the commencement of the instant case, appellant made demand upon respondent for payment of the amount of the judgments obtained against him by Frank Collard and Irving R. Collard, together with

attorney fees appellant had incurred in defending the actions. This payment was refused by respondent, whereupon appellant instituted this action in the district court of Ada county, setting forth four distinct causes of action, to recover the amounts of the judgments, interest and costs obtained against him by Frank Collard and Irving R. Collard, and reasonable attorney fees, which he had incurred in the defense of said actions.

In paragraph five, in each of the four causes of action in appellant's amended complaint, he alleges, as follows:

"That at all the times during the period commencing with and including February 8, 1930, and ending with and including May 24, 1930, William P. Gilderoy was the owner and holder of the policy of insurance hereinbefore mentioned and of the Chrysler automobile insured thereunder and, during said times there was no change in his interest or ownership thereof."

All of which is denied by respondent in its answer. Appellant further, among other things, alleges in paragraph six of each of his four causes of action, that the said appellant was operating the Chrysler automobile for "business purposes," at the time and place when said collision took place, which allegation was admitted by respondent in its answer.

The case was tried before a jury, and at the close of appellant's case the respondent moved for nonsuit, in that appellant had failed to prove a sufficient case to entitle him to a verdict of the jury or a judgment. The motion was sustained and judgment of dismissal entered, from which judgment this appeal has been perfected. The appellant specifies as error that the lower court erred in sustaining respondent's motion for nonsuit, entering its judgment of dismissal against appellant in favor of respondent, and that the judgment of dismissal is not supported by the evidence, and is against the law.

It is the law, as announced by this court, that a motion for nonsuit admits the truth of plaintiff's evidence and every fact which it tends to prove, or which can be

gathered from any reasonable view of it, and appellant is entitled to the benefit of all inferences, in his favor, which the jury would have been justified in drawing from the evidence, had the case been submitted to it. (*Donovan v. Boise City*, 31 Ida. 324, 171 Pac. 670; *McKenna v. Grunbaum*, 33 Ida. 46, 190 Pac. 919; *Testo v. Oregon-Washington R. R. & Nav. Co.*, 34 Ida. 765, 203 Pac. 1065; *Brauner v. Snell*, 35 Ida. 243, 205 Pac. 558; *Coulson v. Aberdeen-Springfield Canal Co.*, 39 Ida. 320, 227 Pac. 29; *Young v. Washington Water Power Co.*, 39 Ida. 539, 228 Pac. 323; *Sweetland v. Oakley State Bank*, 40 Ida. 726, 236 Pac. 538.) The record in this case must then be considered in the light of the principle of law thus established. A number of vital propositions disclosed, which we will discuss, will be controlling.

Appellant takes the position that the transaction between himself and Gilderoy on May 23, 1930, when the conditional sales contract was signed, was but an executory contract, dependent upon two conditions precedent to be performed before the contract became executed, namely, the honoring and payment of the $100 check from Peterson to Gilderoy, which check was to be paid on the Monday following the May 23d, and the acceptance and purchase of the conditional sales contract by the Commercial Credit Company. That if either, or both, of the conditions were not fulfilled, then there was no contract of sale of the automobile existing. In order to strengthen his position, appellant claims that the automobile was merely loaned to him by Gilderoy, to make a trip to Boise on May 24, 1930, and that while he had the use of the automobile, to make the trip, the possession of the automobile, in reality, still was in Gilderoy; that no interest or title, legal or equitable, passed to appellant until the $100 check was paid, and the Commercial Credit Company had purchased the contract.

Respondent contends, however, that the contract entered into between Peterson and Gilderoy on May 23d was an executed one; that possession of the automobile was delivered to appellant at the time the conditional sales con-

tract was signed; that a substantial equitable interest passed at that time from Gilderoy to appellant; that the payment of the $100 check the following Monday, and the acceptance and purchase of the conditional sales contract by the Commercial Credit Company, were conditions subsequent.

There are no technical words to distinguish between conditions precedent and conditions subsequent. The distinction is a matter of construction. The same words may indifferently make either, according to the intent of the person who creates the condition. (*Selden v. Pringle*, (N. Y.) 17 Barb. 458; *Brittain v. Taylor*, 168 N. C. 271, 84 S. E. 280; *Scott v. Roethlisberger*, 178 Mich. 581, 146 N. W. 307; *Hawkins v. Hansen*, 92 Kan. 740, 142 Pac. 280; *Elson v. Jones*, 42 Ida. 349, 245 Pac. 95.) The question whether the contract, entered into between appellant and Gilderoy, was executed or executory depends primarily upon whether the conditions were precedent or subsequent. It has been repeatedly held by this court that, whether a contract of sale is to be considered executed or executory, is to be determined by the intention of the parties. That intention is to be gathered from the language of the contract, if the language of the contract is unambiguous, otherwise, by its letter in the light of such circumstances as may be properly considered in determining the intention of the parties. (*Idaho Implement Co. v. Lambach*, 16 Ida. 497, 101 Pac. 951; *Mark P. Miller Milling Co. v. Butterfield-Elder Implement Co.*, 32 Ida. 265, 181 Pac. 703; *Idaho Products Co. v. Bales*, 36 Ida. 800, 214 Pac. 206; *United States v. Woodruff*, 22 Wall. (89 U. S.) 180, 22 L. ed. 863; *Smith v. Edwards*, 156 Mass. 221, 30 N. E. 1017.) The usual test as to whether a contract of sale is executed or executory is to consider at whose risk the subject matter of the contract is. If the risk of loss, from injury to, or destruction of, the property, is on the buyer, the contract is executed, and if on the seller, it is executory. (*Idaho Products Co. v. Bales, supra; Mark P. Miller Milling Co. v. Butterfield-Elder Implement Co., supra; Western Seed Marketing Co. v. Pfost*, 45 Ida. 340, 262 Pac. 514; 23 R. C. L. 1346.)

■■ In applying the principles of law just stated, to determine whether a contract is executed or executory, and whether a condition is one precedent or subsequent, to the facts and circumstances in this case, we find that when appellant and Gilderoy entered into negotiations on May 23, 1930, certainly, Gilderoy intended to sell, and appellant intended to purchase the automobile in question. The conditional sales contract entered into is clear and unambiguous as to its terms, whereby Gilderoy was selling the automobile to appellant for a definite sum of money, to be paid in instalments, reserving merely the legal title to the automobile, appellant to have possession of the automobile, and upon full compliance with the contract, he was also to receive the legal title.

Immediately upon execution of the contract, appellant was given possession of the automobile, and used it for his own purposes in driving in and about Weiser on the afternoon of May 23d. And on the following day he started to drive to Boise, and while on his way, the collision occurred which brought about this litigation. It is true that there was some oral testimony to the effect that while making this transaction, with Gilderoy, appellant stated that he wanted to use the car to drive to Boise the following day, and that Gilderoy had no objection. Appellant contends that the record shows he was merely borrowing the car from Gilderoy to make the trip to Boise, but the old adage still rings true, "that actions speak louder than words."

Exhibit "1," which is the insurance policy in question, written by the respondent, and which was introduced in evidence by appellant, contains a fifty per cent retention collision indorsement, whereby this automobile was protected against loss or damage resulting from collision, and this clause was in full force and effect on May 24, 1930, if appellant's theory is to be adopted, that he had no interest in the car. Notwithstanding this fact, appellant obtained collision insurance on the automobile, between the time that the contract was entered into between himself and Gilderoy and the time of the collision. It appears further that the

damage to the automobile, sustained by appellant, was paid by the company from whom he obtained the collision insurance. The loss or damage to the car, due to the collision, fell upon the appellant, who was the purchaser.

The appellant had ample time, after the collision, to have stopped payment on the $100 check. Or he could have refused to deposit the money in the bank on which the check was drawn, so that it would not have been honored on the Monday following May 23d. If he had done this the contract would not have been in force and effect, if the parties considered that the payment, or honoring of the check, was a condition precedent, whereby the contract would no longer have been of any force, and Gilderoy would then have been the sole owner of the car covered by the collision insurance he procured.

Under the principles of law, above stated, we believe that the record shows conclusively that it was the intention of the parties that the contract was to be considered as executed, dependent only upon conditions subsequent. When the terms of an agreement of sale are undisputed, and the attendant circumstances are agreed upon, the question of the intent of the parties, with respect to passing title, is generally speaking, one of law for the court. (*Mark P. Miller Milling Co. v. Butterfield-Elder Implement Co.*, *supra; Idaho Products Co. v. Bales, supra; Brown v. Herrick*, 34 Ida. 171, 200 Pac. 117.)

Assuming that the contract between appellant and Gilderoy was executed and possession of the property was delivered to the purchaser, which has been clearly established, the question then arises, did such interest or title to the property pass from the seller to the purchaser as to void the policy? The policy under the change of ownership clause provided as follows:

"All rights hereunder are strictly personal to the Assured named in this policy, and this policy shall terminate immediately if there is any change, voluntarily or otherwise, in the ownership or interest of such Assured in this policy or in the automobile insured hereunder . . . . "

We believe that the law is well established, that the buyer under a conditional sales contract, acquires a property right in the article, and a substantial interest in the property, so as to avoid the policy with terms such as are found in the instant case. (*Coffin v. Northwestern Mut. Fire Assn.,* 43 Ida. 1, 249 Pac. 89, 90, 48 A. L. R. 1225; *Gibb v. Philadelphia Fire Ins. Co.,* 59 Minn. 267, 61 N. W. 137, 50 Am. St. 405; *London Assur. Corp. v. Dean,* (Tex. Civ. App.) 281 S. W. 624; *Finkbohner v. Glens Falls Ins. Co.,* 6 Cal. App. 379, 92 Pac. 318; 2 Berry on Automobiles, 6th ed., p. 1743, sec. 2164.) In the case of *Coffin v. Northwestern Mut. Fire Assn., supra,* the court said:

"A vendee under a conditional sales contract acquires not only the right of possession and use, but the right to become the absolute owner upon complying with the terms of the contract; these are rights of which no act of the vendor can divest him. If a vendor of property conditionally sold, wrongfully takes possession of the property the purchaser may recover the value thereof less the amount due.

"The essential incidents of property are transferred to the vendee, along with possession and right of use of the property, as if the property were his own, and all that remains is the debt, and the title to the property as security.

"Risk of loss should properly fall upon the party who has the beneficial incidents of title. The weight of authority is to the effect that if there is a loss or destruction of the property, while in the possession of the vendee, the loss is the buyer's and not the seller's. The amount remaining unpaid under the conditional sale contract is still due the seller.

"A seller does not simply contract that the buyer shall have possession, but he actually delivers possession, and such possession is delivered, not to hold the goods for the seller, but to use it as the buyer's own, and if the purchaser defaults, the seller may retake the property in the manner specified in the contract or elect to treat the sale as an absolute one, and sue for the remaining amount due of the purchase price.

"The buyer acquires more than a contract right, namely, a property right."

■■ Appellant insists most earnestly that by reason of the fact that the policy in question was not canceled until August 2, 1930, and the unearned premium returned on the short rate basis, that respondent thereby waived any objections on which the validity of the insurance contract could be denied. On this issue we must find against the appellant, as we believe the weight, as well as the best reasoned authority is to the contrary, although we admit there is respectable authority holding to appellant's view. Perhaps as clear a statement of the legal principle involved, as we have found, is in the case of *Pearlstine v. Westchester Fire Ins. Co.*, 70 S. C. 75, 49 S. E. 4, in which the court says:

"Where, however, the premium is paid, and in consideration of it the company contemporaneously issues its policy, which is a contract to insure on certain conditions therein mentioned, and the insured violates those conditions in a material particular without the knowledge of the insurer, in case of loss the insurer is not bound to return the consideration of the policy before standing upon its terms. The consideration has been paid, not for an absolute promise, but for a promise of the insurer to hold itself liable for loss on certain conditions. The company does not fail in its promise by insisting on its conditions; not having broken its contract, it has a right to retain the consideration. The insured has received all he contracted and paid for—conditional insurance—and he has no right to demand a return of the price paid from the insurer, on pain of liability for unconditional insurance. After the loss occurs as to the property destroyed, the policy is no longer current, but has become matured by reason of the fire, and no question of good faith is involved in retaining the premium, because the rights of the parties are then fixed."

The general rule is:

"That a return of the premium is not essential to the avoidance of a policy, nor is its retention a waiver . . . . or where knowledge of the ground of avoidance is first

obtained after a loss, nor need an insurer return or tender the premiums received as a condition of setting up as a defense the death of the insured from an expected cause, since the insurance contracted for has been given.'' (14 R. C. L. 1193, sec. 370.)

"Where a loss has occurred before the company acquires knowledge of the ground of forfeiture, the retention, by the company of the unearned portion of the premium is not inconsistent with a claim of forfeiture of the policy.'' (32 C. J. 1352.)

The following cases are in accord with the principle announced: *Phoenix Ins. Co. v. Stevenson*, 78 Ky. 150; *Robinson v. Aetna Fire Ins. Co.*, 135 Ala. 650, 34 So. 18; *Houdeck v. Merchants' & Bankers' Ins. Co.*, 102 Iowa, 303, 71 N. W. 354; *Todd Co. v. Farmers' Mut. Fire Ins. Co.*, 137 Mich. 188, 100 N. W. 442; *Alabama State Mut. Assur. Co. v. Long Clothing & Shoe Co.*, 123 Ala. 667, 26 So. 655; *Shuggart v. Lycoming Fire Ins. Co.*, 55 Cal. 408; *Goorberg v. Western Assur. Co.*, 150 Cal. 510, 89 Pac. 130, 119 Am. St. 246, 11 Ann. Cas. 801, 10 L. R. A., N. S., 876; *Norris v. Hartford Fire Ins. Co.*, 55 S. C. 450, 33 S. E. 566, 74 Am. St. 765; *Benanti v. Delaware Ins. Co.*, 86 Conn. 15, 84 Atl. 109, Ann. Cas. 1913D, 826; *Aetna Ins. Co. v. Mount*, 90 Miss. 642, 44 So. 162, 45 So. 835, 15 L. R. A., N. S., 471; and see 5 Cooley's Briefs on Insurance, 2d ed., 4348. In the case of *Goorberg v. Western Assur. Co., supra*, at page 133, the court said:

"The defendant is not in this action seeking to rescind the contract sued upon. It is standing upon the contract, and insisting that under its terms there is no liability. Nor can the mere retention of the premium, after the loss has occurred, and where the liability is steadfastly denied, constitute either a waiver of the defense or an estoppel. To constitute such waiver or estoppel by the action or nonaction of the insurer after the loss, it is essential ''that one party should have relied upon the conduct of the other, and been induced by it to put himself in such a position that he

would be injured if the other should be allowed to repudiate his action.''

In the instant case, as in the case just quoted from, nothing was done by respondent which could have led the appellant to believe that it would not take advantage of the breach of warranty, respondent steadfastly refused to assume responsibility.

There is an important distinction recognized by the authorities, in a claim for, and retention of, the premiums up to the date of cancelation, with an attempt to cancel a policy for a ground going to the inception of the risk, and for a ground occurring later, after the contract has been in force and which does not go to the inception of the risk. The authorities are quite uniform, as to the former, that the company after notice of the ground of forfeiture, by retaining the premium without canceling the policy, waives the breach. The case of *Allen v. Phoenix Assur. Co.,* 14 Ida. 728, 95 Pac. 829, cited by appellant, falls within the former class and is readily distinguishable, both upon facts and principle, from the case at bar. In the Allen case, *supra,* the breach of the contract under consideration existed at the time of the inception of the risk. The case of *Neat v. Miller,* (Wash.) 17 Pac. (2d) 32, apparently supports the theory contended for by the appellant. However, the court cites but one case in support of its holding, to wit: *New Jersey Rubber Co. v. Commercial Union Assur. Co. of London,* 64 N. J. L. 580, 46 Atl. 777, which case comes within the same class as *Allen v. Phoenix Assur. Co., supra,* and the Washington case is not in accord with the weight of authority, and we are not disposed to adopt the rule therein announced.

The appellant contends that where the insurer relies upon the breach of a condition subsequent, incorporated in a policy of insurance, to defeat the right of insured to recover after loss, the insurer must specially plead and prove such condition and the breach thereof; that such breach is a matter of defense and the burden of proving it is upon the defendant. Appellant in his complaint al-

leges that commencing with, and including February 8, 1930, to and including May 24, 1930, Gilderoy was the owner of the Chrysler automobile insured under the policy, and that during this period there was no change in his interest or ownership. These allegations were denied by respondent in its answer, but respondent, in its answer, did not set forth any affirmative defenses. It is to be observed that in the allegations of appellant's amended complaint, he was scrupulously careful to allege facts to bring himself within all of the terms and conditions of the policy, except one, that with reference to the use of the car, as if he considered that those facts were conditions precedent to the right of his recovery. On the trial of the case, it is apparent, he proceeded upon the same theory, introducing evidence to show that Gilderoy was owner of the automobile on February 8th, and obtained the insurance policy, and then attempted to show that there was no change in interest or ownership, to and including May 24, 1930. In making this proof, however, he introduced the insurance policy, the conditional sales contract, and disclosed by oral testimony the transaction that took place between Gilderoy and himself on May 23d. Appellant attempted to show that on May 24th, Gilderoy was still the owner of the automobile and that he had not parted with any title or interest to the appellant. The cross-examination of appellant, wherein it was developed that he had personally obtained collision insurance on the automobile, prior to the accident on May 24th, was entirely proper and pertinent to the issues being developed, for appellant was attempting to prove by his testimony that he had not acquired any interest in the automobile, whatsoever. Appellant in making his own case and by evidence which he introduced, established the fact that he had acquired an interest in the automobile, thereby breaching the terms of the policy. Appellant was equally as zealous in proving the other allegations of the complaint, to bring himself within the strict terms and provisions of the policy, all of which he now claims on appeal, were conditions subsequent, a violation of which could not be taken advantage of unless re-

spondent set forth the breach thereof by way of affirmative defense in its answer. Suffice it to say that all that would have been required of the appellant was to have alleged in his complaint and establish by evidence a *prima facie* case; establishing the fact of the ownership, or insurable interest, of the automobile by Gilderoy on February 8, 1930; the issuance and delivery of the policy, and payment of the premium thereon, and the loss through and on account of the cause insured against. (*Allen v. Phoenix Assur. Co.,* 12 Ida. 653, 88 Pac. 245, 10 Ann. Cas. 328, 8 L. R. A., N. S., 903.) Then the respondent, if it intended to rely upon any breach of warranties, would have been required to set them forth as special defenses in its answer, and prove them at the trial in order to get the benefit of the defense by reason of such breach. But, as heretofore stated, the pleadings and trial conclusively show that the case was not presented before the trial court on such theory. It would be manifestly unfair to the trial court, and respondent, to permit appellant now on appeal to present an entirely new and inconsistent theory from which it was presented and tried on in the lower court. The appellant will be held to the same theory on which the case was tried in the lower court. (*Toulouse v. Burkett,* 2 Ida. (Hasb.) 288, 13 Pac. 172; *Work Bros. v. Kinney,* 7 Ida. 460, 63 Pac. 596; *Brown v. Hardin,* 31 Ida. 112, 169 Pac. 293; *Milner v. Earl Fruit Co.,* 40 Ida. 339, 232 Pac. 581; *Boise Payette Lumber Co. v. Bales,* 52 Ida. 762, 20 Pac. (2d) 214.) The appellant having assumed that it was incumbent upon him to allege and prove the allegations of his amended complaint, and while doing so establishing the fact that he was not entitled to recover on the theory on which the case was tried, he will be held to that theory, notwithstanding the fact that respondent did not allege the breach of the terms of the policy as an affirmative defense.

We feel that there is another reason, however, independent of those already stated, why the action of the trial court in granting the motion for nonsuit should be sustained. The appellant affirmatively alleges in his com-

plaint that he was, at the time of the collision, driving the automobile for "business purposes." This allegation was admitted by respondent, and the policy expressly provided that the automobile was to be used for private pleasure only. An admission made in a pleading is binding on the party making it. (*Smiley v. Smiley,* 46 Ida. 588, 269 Pac. 589; 49 C. J. 122.) Assuming, as we must, under the pleading, that the automobile was in use for business purposes, it was being used in direct violation of the terms of the policy and a breach thereof. To overcome this he was obliged to allege facts showing a waiver or estoppel, and if plaintiff relies on waiver or estoppel as to any defense available to the defendant under the facts stated in the complaint, the facts constituting such waiver or estoppel must be pleaded in the first instance. (*Goorberg v. Western Assur. Co., supra; McCoy v. Iowa State Ins. Co.,* 107 Iowa, 80, 77 N. W. 529; *Seat v. Quarles,* 31 Ida. 212, 169 Pac. 1167.) Attorneys for appellant, in their brief, state that if they had opportunity to examine the policy in question prior to the trial, the allegations would not have been made in the complaint. However, appellant introduced the policy in evidence, and they had ample opportunity to make application to the court, even at the trial, to amend the complaint, which could have been allowed in the discretion of the court. But no effort was made on appellant's part, and he should not now be heard to complain that his pleading is not such as he wanted it to be. Appellant insists that the evidence which was introduced in the case shows affirmatively that the car was not being used for business purposes at the time of the collision, but for pleasure purposes. It is to be noted, however, that the evidence introduced, as to what the automobile was being used for at the time, was merely incidental in the attempt by the appellant to show that he was driving to Boise in a borrowed automobile, and not one in which he had a substantial interest. That a use of an automobile for business purposes is a violation of the insurance contract, which provided that it should be used for pleasure purposes only,

is well established. (*Record v. Royal Ins. Co.*, 253 Mass. 617, 149 N. E. 546; 2 Berry on Automobiles, 6th ed., p. 1739, sec. 2160.)

It appearing that the lower court did not err in granting the motion for nonsuit and judgment of dismissal, the judgment is affirmed, with costs to respondent.

Givens and Holden, JJ., and Sutphen, D. J., concur.

Rice, D. J., dissents.